[599 NYS2d 816]

Ultramar Energy Limited, Respondent, v Chase Manhattan Bank, N.A., Appellant, et al., Defendants.

First Department, July 1, 1993

### APPEARANCES OF COUNSEL

*Adlai S. Hardin, Jr.,* of counsel, New York City *(Gila E. Gellman* with him on the brief; *Milbank, Tweed, Hadley & McCloy,* attorneys), for appellant.

*Michael F. Fitzgerald* of counsel, New York City *(John D. D'Ercole* with him on the brief; *Robinson Brog Leinwand Reich Genovese & Gluck, P. C.,* attorneys), for respondent.

### OPINION OF THE COURT

SULLIVAN, J. P.

On this appeal, we are confronted at the outset with the

question of whether a defendant's second motion to dismiss pursuant to CPLR 3211 (a) (1) and (7) violates CPLR 3211 (e), which allows the making of only one motion on one or more of the grounds set forth in subdivision (a) of CPLR 3211. It is an issue that divides us. Our dissenting colleagues, in invoking the so-called "single motion" rule, designed to prevent repetitive motions *(see, CPLR 3211 [e]; Schwartzman v Weintraub, 56 AD2d 517),* or subsequent motions on alternative grounds *(see, e.g., McLearn v Cowen & Co., 60 NY2d 686),* would avoid reaching the merits of the case. We believe that the single motion rule has no application in the circumstances presented and that the matter is ripe for disposition by motion.

The CPLR 3211 (a) (1) and (7) motion by defendant Chase Manhattan Bank, N.A. is neither repetitive nor based on an alternative ground. In reinstating plaintiff's unjust enrichment cause of action on the earlier appeal, after the IAS Court had dismissed the complaint, this Court found, *inter alia,* that Chase had failed to submit sufficient documentary proof of its right to enforce the rights of its assignor, Drexel Burnham Lambert Trading Corp., to the proceeds of certain accounts receivable arising out of a certain "circular sale sequence." *(Ultramar Energy v Chase Manhattan Bank,* 179 AD2d 592, 593.) Chase merely took its cue and supplied the documentary evidence found missing on the first motion. Rather than imposing a burden, this motion provides the court with the opportunity to alleviate the calendar of an already overburdened court system and to remove therefrom, as will be shown, a meritless case without the unnecessary expense of discovery and further motion practice or a trial only "to obtain a preordained outcome." *(Foley v Roche,* 86 AD2d 887.) Unlike *McLearn v Cowen & Co. (supra),* which, as noted, involved a second motion to dismiss based on an alternate ground, Chase has merely responded to and cured a documentary gap identified by this Court.

The other basis for reinstatement of plaintiff's unjust enrichment claim was, in this Court's words, the "question as to whether Chase was entitled to [the proceeds of accounts receivable owing to the debtor, Drexel] in light of the debtor's non-performance of its contractual obligations and Chase's failure to cure such non-performance." *(Ultramar Energy v Chase Manhattan Bank,* 179 AD2d 592, 593, *supra.)* To appreciate the issue fully, a brief recitation of the facts, which are neither complex nor controverted, is in order.

During the pertinent period, January to March 1990, both

Ultramar Energy Limited, the plaintiff herein, and Chase were creditors of Drexel. A crude oil trader, Ultramar agreed to sell 500,000 barrels of crude oil to Drexel for $11,235,000 for delivery in February with payment to be made on March 20, 1990. Ultramar was unsecured in the transaction, relying solely on Drexel's creditworthiness. Unfortunately, Drexel's corporate parent caused it to transfer $600,000,000 to the parent, which thereafter filed for bankruptcy. As a result of the transfer, Drexel, which ultimately went into bankruptcy itself, was unable to meet its obligation to Ultramar on March 20, 1990.

During this same period, Chase made loan advances to Drexel by issuing and paying on letters of credit to other vendors to enable Drexel to purchase crude oil, which Drexel sold to third-party vendees, giving rise to accounts receivable, subsequently assigned to Chase as security for the loans. With respect to payment due by Drexel on March 20, 1990, Chase issued and paid on letters of credit in the total sum of $107,325,262 to finance Drexel's crude oil purchases. With respect to payment due Drexel on March 20, 1990, by letter of January 31, 1990, Drexel assigned to Chase accounts receivable from third-party vendees resulting from crude oil sales totalling $108,323,844 to these vendees. Chase has received $97,020,691 in payments on these receivables.

In its complaint, Ultramar alleges that, as a subscriber of Oil Combinations, Inc. (OCI), which services members such as Ultramar and Drexel which trade West Texas intermediate crude oil for delivery at Cushing, Oklahoma on the ARCO pipeline, it engaged in a series of oil sales transactions designated as a circular sales sequence. OCI determines by computer that a combination of its subscribers have contracted to buy and sell matching volumes of crude oil for simultaneous delivery on the same date and at the same place. After notifying the affected subscribers, OCI sets up a circular sales sequence by which the subscribers are relieved from arranging the physical delivery of the oil through the pipeline, thereby eliminating the transportation charges. Although physical delivery of the oil is cancelled, the other terms of the transaction are unaffected. Thus, in accordance with their contract, each vendor is entitled to payment from its vendee and each vendee is obligated to pay its vendor as though physical delivery had actually taken place in the preceding month.

Ultramar apparently alleges that some of the Drexel accounts receivable assigned and paid to Chase were part of the

January 24, 1990 circular sales sequence and that for some reason it was improper or inequitable for Chase to accept the proceeds of these accounts receivable, referred to by Ultramar as the "circular sales sequence proceeds." The amended complaint alleges that Drexel "did not and could not earn any right to any part of the proceeds unless and until it made its payment to Ultramar in accordance with the circular sales sequence."

There is, however, nothing in the OCI Rules and Regulations or any basis elsewhere for the assertion that Drexel was required by the circular sales sequence to pay Ultramar as a precondition to its right to monies due and owing to it under separate transactions with its vendees. Nor is there any reason why Drexel could not assign its accounts receivable due from its vendees. Although seeking "restitution", which implies an equitable right to the return of something to which it was entitled, Ultramar has never argued that it had any right to or interest in the accounts receivable, assigned and paid to Chase, which are at issue in this proceeding.

The allegation that Drexel had earned no right to its accounts receivable which may have formed part of the January 24, 1990 circular sales sequence reflects a distorted view of the nature of such transactions. As noted, the sole purpose and effect of the OCI service was to reduce a combination of sales transactions to paper transactions to avoid pipeline use charges. Its only effect was to discharge the sequence participants' obligations to make physical delivery of the crude oil. Payment obligations were unaffected, neither enhanced, diminished, nor conditioned in any way.

Thus, there is no basis for the conditioning of Drexel's right to be paid accounts receivable by its vendees on Drexel's payment to Ultramar. There was no such condition in the arrangement and none is alleged. Nor is there any claim that Chase was not a secured creditor of Drexel or that Chase's notices to Drexel's third-party vendees were fraudulent. Under New York law, Chase, as a creditor, secured or unsecured, was entitled to demand and receive payment of its debt from any source available to its obligor, Drexel. That such payment deprives the obligor of funds to satisfy other creditors does not convert the creditor who is paid into a guarantor for other creditors who are not paid.

Under the law of this State, a conveyance which satisfies an antecedent debt made while the debtor is insolvent is

neither fraudulent nor otherwise improper, even if its effect is to prefer one creditor over another. *(See,* Debtor and Creditor Law §§ 272, 273; *see also, Ronga v Chiusano,* 97 AD2d 753.) It is of no significance "that the transferee has knowledge of such insolvency. Nor is the transfer subject to attack by reason of knowledge on the part of the transferee that the transferor is preferring him to other creditors, even by virtue of a secret agreement to that effect." (30 NY Jur 2d, Creditors' Rights and Remedies, § 306.) Even though insolvent, a debtor may properly assign assets to a creditor as security for an antecedent debt although the effect of the transfer will be to prefer that creditor. *(Seip v Laubach,* 335 Pa 225, 4 A2d 149, 150 [1939].)* "It is not unfair, and therefore it is not a fraudulent conveyance, for the debtor arbitrarily to select the creditors whom he chooses to pay, although these favourites know that there will not be enough left to pay the others." (1 Garrard Glenn, Fraudulent Conveyances and Preferences § 289a, at 494 [1940 rev ed].) Thus, even if Chase had not had a security interest in the accounts receivable, even if it had known of Drexel's financial difficulties and even if Chase had known that such assignment would result in Ultramar's not getting paid, Chase would have been within its rights in taking accounts receivable in satisfaction of Drexel's debt.

Finally, there is no authority for the proposition that a secured creditor has a duty to cure its debtor's nonperformance of a collateral obligation to another creditor as a condition to its receipt of funds in which it has a security interest. Such a novel theory, if adhered to, giving Ultramar a claim to Drexel's accounts receivable superior to Chase's perfected security interest, would do violence to the principles of priority and the filing requirements of the Uniform Commercial Code and undermine the fundamental policy of this State with respect to accounts receivable financing.

Accordingly, the order of the Supreme Court (Shirley Fingerhood, J.), entered April 7, 1992, denying the motion of defendant Chase Manhattan Bank, N.A. to dismiss the third cause of action of the amended complaint, should be reversed, on the law, with costs and disbursements, and the motion granted.

Asch, J. (dissenting). Defendant, Chase Manhattan Bank, N.A., previously moved, pursuant to CPLR 3211 (a) (1) and (7), to dismiss the amended complaint herein. The prior order of the Supreme Court, which granted that motion by dismissing

plaintiff's two causes of action against the bank for unjust enrichment and tortious interference with contract, was modified by this Court to reinstate plaintiff's cause of action for unjust enrichment (179 AD2d 592).

Instead of answering, defendant Chase made this second motion pursuant to CPLR 3211 (a) (1) and (7) for dismissal.

However, CPLR 3211 (e) provides in pertinent part that "[a]t any time before service of the responsive pleading is required, a party may move on one or more of the grounds set forth in subdivision (a), and *no more than one such motion shall be permitted*" (emphasis added).

As Professor Siegel notes, the requirement for a single CPLR 3211 motion before answer "has both procedural and administrative missions. It is designed to protect the pleader from being harassed by repeated CPLR 3211 (a) motions and to spare the court's motion calendars the burden of a CPLR 3211 motion more than once in the same case." (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3211:55, at 75-76.)

Therefore, the order of the Supreme Court denying the motion of defendant Chase to dismiss the third cause of action of the amended complaint pursuant to CPLR 3211 (a) (1) and (7), should be affirmed since the motion is forbidden by the express language of CPLR 3211 (e).

Defendant is not foreclosed from raising its contentions in another form *(see, McLearn v Cowen & Co.,* 60 NY2d 686, 689).

KUPFERMAN and ROSS, JJ., concur with SULLIVAN, J. P.; ASCH and KASSAL, JJ., dissent in a separate opinion by ASCH, J.

Order, Supreme Court, New York County, entered April 7, 1992, reversed, on the law, with costs and disbursements, and the motion granted.