**MacDRAW, INC., Plaintiff–Appellant,**

v.

**THE CIT GROUP EQUIPMENT FINANCING, INC., and Richard Johnston, Defendants–Appellees.**

Docket No. 97–7029.

United States Court of Appeals, Second Circuit.

Argued Dec. 10, 1997.[*]

Decided Oct. 15, 1998.

---

[*] Judge Frank X. Altimari voted for the disposition herein, but due to illness was unable to consider this opinion. He died on July 19, 1998. The remaining members of this panel, who are in agreement, have decided this case and issued this opinion pursuant to Second Circuit Local Rule § 0.14. *See United States v. Desimone,* 140 F.3d 457 (2d Cir.1998).

Lawrence W. Schilling, New York, NY (Ramsey Clark, on the brief), for Plaintiff–Appellant.

Susan G. Rosenthal, Winick & Rich, New York, NY (Jeffrey H. Weinberger, Bruce C. Anderson, of counsel), for Defendants–Appellees.

Before: CABRANES, Circuit Judge, and PARKER, District Judge.**

_____

** The Honorable Barrington D. Parker, Jr., of the United States District Court for the Southern

PER CURIAM:

Plaintiff-appellant MacDraw, Inc. ("Mac-Draw") appeals from partial summary judgment entered in the United States District Court for the Southern District of New York by Judge Shirley Wohl Kram in favor of defendants-appellees The CIT Group Equipment Financing, Inc. and Richard Johnston (collectively, "CIT"), dismissing MacDraw's claim of "unjust enrichment." It also appeals from a subsequent order entered by Judge Denny Chin granting CIT judgment as a matter of law, pursuant to Fed.R.Civ.P. 52(c), on MacDraw's promissory estoppel and fraud claims and from Judge Chin's denial of MacDraw's motions to amend its complaint to include a claim for negligent misrepresentation and to reassert a breach of contract claim. In addition, MacDraw challenges Judge Chin's impartiality. We affirm in all respects.

## I.

The factual background and procedural history of this matter are set forth in two previous opinions of this Court, with which we assume familiarity. *See MacDraw, Inc. v. CIT Group Equipment Financing, Inc.*, 73 F.3d 1253 (2d Cir.1996) (*"Mac Draw I"*); *MacDraw, Inc. v. CIT Group Equipment Financing, Inc.*, 138 F.3d 33 (2d Cir.1998) (*"MacDraw II"*). The background information pertinent to this appeal is as follows.

### A. Factual Background

For purposes of this appeal, the following facts are not in dispute. This case arose from a dispute over CIT's financing of a sale of industrial equipment by MacDraw to nonparty Laribee Wire Manufacturing Company, Inc. ("Laribee"). In July 1989, Laribee ordered certain wire-drawing equipment from MacDraw for a purchase price of approximately $7,000,000, to be paid in installments. Laribee approached CIT to finance the purchase. Under a Loan and Security Agreement between Laribee and CIT, dated as of July 2, 1990, CIT agreed to provide a series of interim loans upon which Laribee could draw to meet its payment schedule. CIT

also received and perfected a security interest in the equipment.

The financing agreement required that, prior to each disbursement, Laribee attest to its solvency and creditworthiness and continue to make payments on previous disbursements. In addition, CIT required that Laribee execute a Vendor's Consent and Agreement, under which Laribee permitted CIT to disburse funds directly to MacDraw. The Vendor's Consent and Agreement contained the following clause:

> [Laribee] shall in all events remain obligated to [MacDraw] under the Purchase Agreement, and CIT assumes no obligations thereunder, it being a successor to [Laribee's] rights but not [its] obligations.

MacDraw completed its delivery of the equipment by July 30, 1990, but continued for several months thereafter to perform work installing and up-grading the equipment. By September 1990, MacDraw had received payment for ninety percent of the cost of the equipment, leaving $711,863 of the total purchase price unpaid. On November 16, 1990, a Laribee officer notified CIT that Laribee had accepted the machinery delivered and installed by MacDraw and authorized CIT to transfer the final ten percent balance to MacDraw. Before releasing the final balance, however, CIT discovered that Laribee had failed to keep current on a revolving line of credit with Banker's Trust, an event that also constituted a default of Laribee's financing agreement with CIT. Accordingly, CIT refused to disburse the final payment to MacDraw.

On December 12, 1990, having failed to satisfy its obligations to Banker's Trust, Laribee informed CIT that it would be unable to meet the criteria for disbursement of the final payment to MacDraw. Two days later, CIT consolidated all of the debt owed to it by Laribee (including debt unrelated to the MacDraw transaction) into a single note, which was secured by the equipment. Laribee filed for bankruptcy on February 7, 1991, and MacDraw and CIT each filed a proof of claim in the proceedings that ensued.[1] The bankruptcy trustee eventually released the

District of New York, sitting by designation.

1. We note that MacDraw was an unsecured creditor of Laribee.

equipment to CIT, which then foreclosed on its security interest in the equipment and sold the machinery to a third party in September 1991.

## B. District Court Proceedings

### 1. Proceedings Before Judge Kram

MacDraw commenced this action against CIT and Johnston in August 1991, seeking, *inter alia,* the $711,863 final installment owed to it. MacDraw premised its various theories of liability on the common factual predicate that defendant Johnston, the CIT employee handling the Laribee account, had on numerous occasions assured MacDraw vice president Massimo Colella that CIT would pay MacDraw the final installment as soon as Laribee accepted the equipment. MacDraw's complaint alleged that Johnston and CIT had engaged in common law fraud by misrepresenting CIT's intention to make the final payment, thereby inducing Mac-Draw to spend additional funds to "fine-tune" the equipment after installation (Count 1); that MacDraw was an intended third-party beneficiary of the agreement between Laribee and CIT (Count 2); that the doctrines of promissory estoppel and unjust enrichment precluded CIT from withholding the final payment from MacDraw (Count 3); that CIT had breached a unilateral contract with Mac-Draw (Count 4); and that CIT had breached a contract implied-in-fact between CIT and MacDraw based on their course of dealing (Count 5). Under each count, MacDraw also sought more than $270,000 in damages for costs that MacDraw had purportedly incurred upgrading the equipment in reliance on CIT's promise to pay the final installment. Following discovery, MacDraw moved for partial summary judgment on Counts 2 through 5 of its complaint. CIT cross-moved for summary judgment dismissing the complaint in its entirety and for sanctions for MacDraw's purportedly frivolous motion practice.

In an unpublished Memorandum Opinion and Order of January 17, 1994, Judge Kram denied MacDraw's motion for partial summary judgment in its entirety and granted CIT's cross-motion on three of the five

counts, dismissing all but MacDraw's fraud and promissory estoppel claims. Judge Kram also granted CIT's motion for sanctions, on the grounds that MacDraw's motion for partial summary judgment was patently meritless with regard to three of the five counts and that certain of MacDraw's damages claims lacked any factual basis. Finally, Judge Kram acknowledged MacDraw's request to file a "motion for voluntary recusal" on the ground that the court had "prejudged the case against [MacDraw]." Judge Kram invited the parties to prepare a schedule for submission of the recusal motion, but MacDraw never filed the motion.

MacDraw and its then-counsel, Larry Klayman, subsequently appealed the imposition of sanctions, and we reversed. *See Mac-Draw I,* 73 F.3d at 1262. However, we "specifically did not hold that Klayman's conduct was not sanctionable. Rather, we held only that the identification of such conduct by the district court was not sufficiently specific." *MacDraw II,* 138 F.3d at 35. In addition, we observed that

> [o]ur discussion should not be taken to suggest that we find the conduct of plaintiff's counsel throughout this litigation to be acceptable. Indeed, we note our sympathy with the district court's frustration; in pursuing this appeal, plaintiff's counsel submitted briefs that included inaccurate characterizations of the record and comments that we consider entirely inappropriate.

*MacDraw I,* 73 F.3d at 1262.

### 2. Proceedings Before Judge Chin

Following remand to the district court, the case was transferred to Judge Chin on November 14, 1995. On September 20, 1996, MacDraw filed a motion for leave to amend its complaint to add a claim for negligent misrepresentation. The district court denied that motion by order dated October 24, 1996.

Judge Chin presided over a bench trial held on November 6, 7, 12, and 13, 1996, at which MacDraw was represented by Klayman and Paul Orfanedes. MacDraw's two witnesses at trial were Colella and MacDraw comptroller Patricia Walter. After Mac-Draw rested, CIT moved pursuant to Rule 52(c) for judgment as a matter of law.[2] The

---

**2.** Rule 52(c) provides in pertinent part that "[i]f during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may

district court denied the motion, indicating that it wished to hear the testimony of defendant Johnston. After it presented Johnston's testimony, CIT renewed its Rule 52(c) motion. At the same time, MacDraw moved to reassert a breach of contract claim, but the court promptly denied MacDraw's motion. The next day, November 13, 1996, in a decision from the bench, the district court granted CIT's motion for judgment as a matter of law.

The district court's grant of judgment in CIT's favor was followed by a series of events that we have described in detail in *MacDraw II*, 138 F.3d at 35–37. First, at the conclusion of the trial, Klayman initiated an argumentative colloquy in open court during which he challenged the merits of the district court's decision. Then, on December 9, 1996, Klayman and Orfanedes wrote the district court a letter questioning its impartiality. In the letter, they suggested that the district court was biased against them because of their participation in campaign financing litigation against other Asian American appointees of the Clinton Administration. After giving Klayman and Orfanedes the opportunity to explain their December 1996 letter both at an oral hearing and through written submissions to the court, on February 5, 1997 Judge Chin sanctioned the two attorneys for having violated Disciplinary Rules 1–102(A)(5) and 7–106(C)(6) of the Code of Professional Responsibility, N.Y. Jud. Law. App. (McKinney 1992).[3]

Klayman and Orfanedes subsequently appealed Judge Chin's order imposing sanctions. We affirmed, concluding that "the suggestions in the December 9 letter [to Judge Chin] entailed claims of partisan and racial bias with no factual basis" and that the

charges were " 'discourteous,' … 'degrading' to the court, … and 'prejudicial to the administration of justice.' " *MacDraw II*, 138 F.3d at 38 (quoting language of Disciplinary Rules 102(A)(5) and 7–106(C)(6)).

## II.

On appeal, MacDraw argues: (1) that Judge Chin's findings of fact and conclusions of law are clearly erroneous; (2) that Judge Chin abused his discretion by denying MacDraw leave to amend its complaint in order to include a claim for negligent misrepresentation; (3) that Judge Chin abused his discretion by denying MacDraw's motion to reassert a breach of contract claim; (4) that Judge Chin should have recused himself; and (5) that Judge Kram erred in dismissing MacDraw's claim for unjust enrichment. We conclude that these contentions lack merit and accordingly affirm.

A. *Rule 52(c) Judgment on Partial Findings*

■ MacDraw's first claim is that the findings of fact and conclusions of law supporting Judge Chin's grant of judgment pursuant to Rule 52(c) are clearly erroneous. We review the district court's findings of fact for clear error and its conclusions of law *de novo*. *See Burger v. New York Institute of Technology*, 94 F.3d 830, 835 (2d Cir.1996) (findings of fact); *Mentor Ins. Co. (U.K.) Ltd. v. Brannkasse*, 996 F.2d 506, 513 (2d Cir.1993) (conclusions of law).

■ As noted above, the only claims remaining to be tried before Judge Chin were for fraud and for promissory estoppel.[4] To prevail on its claim of common law fraud,

---

enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence. Such a judgment shall be supported by findings of fact and conclusions of law...."

**3.** Disciplinary Rule 1–102(A)(5) provides that: "A lawyer shall not engage in conduct that is prejudicial to the administration of justice."

Disciplinary Rule 7–106(C)(6) provides that: "In appearing as a lawyer before a tribunal, a

lawyer shall not engage in undignified or discourteous conduct which is degrading to a tribunal."

The sanctions consisted of: (1) revoking Klayman's and Orfanedes's *pro hac vice* status; (2) denying any future applications by either attorney to appear before Judge Chin on a *pro hac vice* basis; and (3) ordering Klayman and Orfanedes to provide a copy of Judge Chin's opinion imposing sanctions to any other judge in the Southern District of New York to whom they may apply for *pro hac vice* status in the future.

**4.** It is undisputed that New York law governs this diversity action.

MacDraw had to prove by clear and convincing evidence: (1) a material, false representation by CIT, (2) made with knowledge of its falsity and (3) an intent to defraud, (4) upon which MacDraw reasonably relied, (5) causing MacDraw damage. *See Kregos v. Associated Press,* 3 F.3d 656, 665 (2d Cir.1993). To prevail on its claim of promissory estoppel, MacDraw had to prove by a preponderance of the evidence: (1) a clear and unambiguous promise made by CIT, (2) upon which MacDraw reasonably and foreseeably relied, and (3) proximately resulting in injury to MacDraw by reason of its reliance. *See Reprosystem, B.V. v. SCM Corp.,* 727 F.2d 257, 264 (2d Cir.1984).

MacDraw's central allegations in this litigation were that Johnston had promised MacDraw the final ten percent payment and that, in the hope of increasing the value of CIT's security interest, Johnston had fraudulently induced MacDraw to perform additional work on the Laribee equipment, even after CIT had learned of Laribee's financial troubles. MacDraw also based its claims on CIT's alleged breach of a purported duty to advise MacDraw of the conditions that Laribee had to satisfy before CIT would release the final installment. At trial, MacDraw attempted to prove these allegations primarily through the following evidence: Colella's testimony that, in an October 11, 1990 phone conversation, Johnston told Colella, "Massimo, don't worry about it, I promise, and we guarantee that you will receive the 10 percent as soon as Laribee confirms its installation of the equipment;" Colella's testimony regarding his interpretation of a faxed letter from Johnston to Colella, written on October 12, 1990, which stated: "In response to your fax of 10/11/90, we will be able to proceed forward with the final funding once we have received confirmation from Laribee that the equipment has been installed and accepted;" Colella's testimony that, during a December 14, 1990 phone conversation, Johnston reiterated his promise that CIT would make the final payment; and the testimony of MacDraw comptroller Patricia Walter that, throughout October and November 1990, Johnston also promised her the final payment.

In response, CIT relied primarily on the testimony of Johnston, who emphatically denied ever having promised anyone at MacDraw that CIT would make the final payment. Johnston described himself as a relatively low-level employee who was responsible only for coordinating the administrative details of the Laribee transaction. Johnston claimed, moreover, that he lacked the authority to promise MacDraw that the final payment would be forthcoming. With regard to the October 12, 1990 fax he had written to Colella, Johnston testified that he meant only to confirm that CIT would begin its "due diligence" upon confirmation that Laribee had accepted the equipment. He also testified that, in October 1990, he had little knowledge of Laribee's financial condition. Finally, Johnston testified that he had informed Colella that there were conditions, other than acceptance of the equipment, that Laribee would have to meet before CIT would disburse the final payment; Johnston acknowledged, though, that he did not go into detail with Colella as to what those conditions were.

Judge Chin decided the case essentially on the basis of a credibility assessment in Johnston's favor. He specifically found "that Mr. Johnston never promised and guaranteed Mr. Colella that CIT would make the final payment as soon as the equipment was installed." Judge Chin also credited Johnston's testimony that the October 12, 1990 fax memorialized only CIT's intention to proceed forward with due diligence—including ascertaining Laribee's compliance with the terms of its financing agreement with CIT—once Laribee accepted the equipment. In addition, he rejected Colella's assertion that Johnston had promised payment during a December 14, 1990 phone conversation, finding instead that the evidence suggested that the two men did not have a conversation on that day at all. Finally, Judge Chin concluded that, whatever Johnston may have said to Colella, it would have been unreasonable for MacDraw to rely on a promise that CIT would release a loan in excess of $700,000 without conducting due diligence. Having found no false representation or unambiguous promise on CIT's part, and no reasonable reliance on MacDraw's part, Judge Chin ordered the entry of judgment in favor of Johnston and CIT.

MacDraw's arguments on appeal amount to nothing more than a plea that we second-guess the credibility determination made by Judge Chin. We see no reason to do so. Judge Chin thoroughly considered the evidence presented by both parties and took great care to support each of his factual findings with citations to the record. Mac-Draw has offered no persuasive reason why those findings should be disturbed. "[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Anderson v. City of Bessemer*, 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Having carefully reviewed the entire record in this case, we conclude that Judge Chin's factual findings were not erroneous, much less clearly erroneous. And in light of that determination, we must also conclude that Judge Chin correctly granted judgment as a matter of law in CIT's favor.

**B.** *MacDraw's Motion to Amend the Complaint*

MacDraw next challenges Judge Chin's denial of its motion for leave to amend the complaint to add a claim for negligent misrepresentation. We review a denial of leave to amend for abuse of discretion. *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1988). Although permission to amend should be freely granted, *see* Fed.R.Civ.P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the district court plainly has discretion to deny leave to amend "where the motion is made after an inordinate delay, no satisfactory explanation is made for the delay, and the amendment would prejudice the defendant." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir.1990). The burden to explain a delay is on the party that seeks leave to amend. *See id.*

In his order denying MacDraw's motion for leave to amend, Judge Chin noted that MacDraw filed the motion over five years after it filed the complaint and more than two years after the close of discovery; that the proposed negligent misrepresentation claim would require additional discovery, causing undue prejudice to the defendants; and that MacDraw's delay was unexplained. Under these circumstances, it was entirely reasonable for the judge to deny leave to amend the complaint.

**C.** *MacDraw's Motion to Reassert a Breach of Contract Claim*

MacDraw also challenges Judge Chin's denial of its motion, made at the conclusion of Johnston's testimony at trial, to reassert a breach of contract claim. Mac-Draw sought to justify the motion on the ground that Johnston had testified that the October 12, 1990 fax that he had written memorialized an "agreement" with Colella. Although MacDraw has not identified the procedural basis for its motion, CIT plausibly suggests that we should construe the motion as having been made pursuant to Federal Rule of Civil Procedure 15(b).[5] We review a district court's denial of a Rule 15(b) motion for abuse of discretion. *See United States v. 890 Noyac Rd.*, 945 F.2d 1252, 1257 (2d Cir.1991).

In light of Judge Chin's factual finding—which we find not clearly erroneous—that the "agreement" to which Johnston referred was only an agreement that CIT would proceed with its due diligence once it learned of Laribee's acceptance of the equipment, the proposed reassertion of a breach of contract claim would have been futile. Moreover, Judge Kram had already dismissed MacDraw's contract-based claims in her Memorandum Opinion and Order of January 17, 1994. Without addressing or deciding whether Judge Kram's ruling itself precluded MacDraw from seeking to reassert a breach of contract claim, we conclude that Judge

---

5. Rule 15(b) provides in pertinent part that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time...."

Chin did not abuse his discretion in denying the motion.

### D. *Judicial Bias*

MacDraw next contends that it was denied its due process right to a trial before an impartial judge and that Judge Chin should have recused himself pursuant to 28 U.S.C. § 455(a).[6] In support of this claim, MacDraw advances the same arguments that we squarely rejected in *MacDraw II*. First, without any additional factual support, MacDraw again makes the suggestion—which we held in *MacDraw II* to be sanctionable—that Judge Chin is biased against Klayman because of Klayman's participation in campaign financing litigation involving John Huang. Second, MacDraw contends that Judge Chin's criticism of Klayman and Orfanedes after the close of the bench trial indicates bias.

█ We merely note and re-emphasize the inappropriateness of MacDraw's challenge to Judge Chin's impartiality. As we noted in *MacDraw II*, it is intolerable for a litigant, without any factual basis, to suggest that a judge cannot be impartial because of his or her race and political background. Moreover, we find that, under the circumstances, Judge Chin's criticism of the performance of MacDraw's attorneys in this litigation was entirely justified and in no way indicative of bias. Finally, we note that, without any plausible basis for doing so, MacDraw's attorneys challenged the impartiality of *both* of the district judges before whom it appeared in this litigation.

### E. *MacDraw's Unjust Enrichment Claim*

█ MacDraw's final contention on appeal is that Judge Kram erred by granting summary judgment in favor of CIT on MacDraw's unjust enrichment claim. "We review a grant of summary judgment *de novo*, drawing all factual inferences and resolving all ambiguities in favor of the nonmoving party." *EFCO Corp. v. U.W. Marx, Inc.*, 124 F.3d 394, 397 (2d Cir.1997).

█ We have observed that, "[u]nder New York law, a plaintiff seeking an equitable recovery based on unjust enrichment must first show that a benefit was conferred upon the defendant, and then show that as between the two parties enrichment of the defendant was unjust." *Reprosystem*, 727 F.2d at 263 (2d Cir.1984). The district court construed MacDraw's unjust enrichment claim as one based on the fact that CIT took possession of and sold the Laribee equipment at a profit, without sharing any of the proceeds with MacDraw.[7] It then gave two reasons for its decision to grant summary judgment in CIT's favor. First, the district court noted that the sale of the equipment was insufficient to cover all of Laribee's outstanding debt to CIT. That, combined with the fact that MacDraw had received $6.4 million in payment for the equipment from CIT, led the district court to conclude that CIT had not been unjustly enriched by its sale of the equipment. Second, the district court reasoned that, in any event, Laribee's junior secured creditors and the Laribee bankruptcy estate would be entitled to priority over any interest asserted by MacDraw.

On appeal, MacDraw contends that the reasons given by the district court are insufficient to sustain the dismissal of MacDraw's unjust enrichment claim. Specifically, MacDraw maintains that the district court did not consider the fairness of CIT's mid-December 1990 consolidation of Laribee's debt into one note secured by the equipment. According to MacDraw, that consolidation masked the profit that CIT realized from its sale of the equipment and gave the district court the false impression that CIT had not been made whole on the Laribee–MacDraw transaction at issue in this litigation. MacDraw also faults the district court for apparently failing to consider MacDraw's assertion that, in anticipation of Laribee's bankruptcy, CIT fraudulently lured MacDraw into doing work that enhanced the value of the equipment in which CIT had a security interest. We find no merit in MacDraw's arguments.

**6.** 28 U.S.C. § 455(a) provides in pertinent part that "[a]ny ... judge ... of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

**7.** It appears from the record that CIT realized $7.3 million from the sale of the equipment, $900,000 more than the $6.4 million that it had disbursed in payments to MacDraw.

[redacted] As an initial matter, well-settled principles of New York law would ordinarily preclude MacDraw from pursuing an unjust enrichment claim against CIT under the circumstances presented here. First, " 'the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract [*i.e.*, unjust enrichment] for events arising out of the same subject matter.' " *U.S. East Telecommunications, Inc. v. U.S. West Communications Services, Inc.*, 38 F.3d 1289, 1296 (2d Cir.1994) (quoting *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 521 N.Y.S.2d 653, 516 N.E.2d 190, 193 (1987)); *see also Restatement of Restitution* § 110 (1937) ("A person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other merely because of the failure of performance by the third person.") Here, the written "Vendor's Consent and Agreement" entered into between Laribee and MacDraw explicitly provided that CIT did not assume any of Laribee's obligations under the purchase orders with MacDraw. Accordingly, the cause of action of unjust enrichment was presumptively unavailable to MacDraw.

[redacted] Second, despite MacDraw's arguments to the contrary, CIT's consolidation of all of the Laribee debt into a single note secured by the equipment was not impermissible. Under New York law, an insolvent debtor "may properly assign assets to a creditor as security for an antecedent debt although the effect of the transfer will be to prefer that creditor." *Ultramar Energy Ltd. v. Chase Manhattan Bank, N.A.*, 191 A.D.2d 86, 91, 599 N.Y.S.2d 816 (1st Dept.1993). Moreover, it is also irrelevant under New York law whether CIT knew that Laribee was insolvent or that the consolidation had the effect of preferring CIT over Laribee's other creditors. *See id.* Finally, there is no support in New York law for the proposition that, as a condition to its receipt of its security interest in the Laribee equipment, CIT had an obligation to satisfy Laribee's debt to MacDraw, which was after all an unsecured creditor. *See id.*

We need not consider MacDraw's contention that CIT's alleged oral promise and fraud rendered these fundamental legal principles inapplicable in the instant case. At the conclusion of the trial, after a full consideration of the circumstances of CIT's course of dealing with MacDraw, the district court found that CIT had neither promised to pay the final installment nor committed any fraud against MacDraw. Accordingly, we affirm the district court's dismissal of MacDraw's unjust enrichment claim.

### III.

We have carefully considered all of MacDraw's arguments and have found them to be without merit. The judgment of the district court is affirmed in all respects.