FIRST DEPARTMENT, JANUARY, 2006

(January 3, 2006)

■ In the Matter of CIT GROUP/COMMERCIAL SERVICES, INC., Respondent, v 160-09 JAMAICA AVENUE LIMITED PARTNERSHIP, Appellant, et al., Respondent. [808 NYS2d 187]—

Order, Supreme Court, New York County (Lewis Bart Stone, J.), entered June 16, 2004, which denied respondent-appellant's motion to vacate a default judgment, affirmed, without costs.

Petitioner CIT Group/Commercial Services, Inc. (CIT) obtained a $66,798.02 default judgment against judgment debtor Central Men's Shop, Inc. (CMS). However, before the judgment was entered, CMS paid $9,000 to respondent-appellant 160-09 Jamaica Avenue Limited Partnership (the Partnership), its landlord, for an alleged three months of back rent pursuant to a "handshake lease." CMS's officers were David Kober and his brother-in-law Seth Orenstein; the Partnership's shareholders are all related to Orenstein and/or Kober by blood or marriage. CIT, as assignee of CMS's accounts receivable, commenced the

301

instant proceeding seeking, inter alia, a turnover of the $9,000 transfer. The petition was duly served on the Partnership by service upon the Secretary of State and an additional mailing was sent to its address on file. Judgment was entered against the Partnership on default and the transfer was set aside pursuant to Debtor and Creditor Law §§ 273, 274, 275 and 276.

The Partnership's subsequent application to vacate its default, pursuant to CPLR 317 and/or 5015, was denied on the ground that its failure to keep a current address on file with the Secretary of State was not a reasonable excuse under CPLR 5015. We affirm but on different grounds, finding that the Partnership, as movant, failed to adequately demonstrate a meritorious defense, which is required under both CPLR 317 and 5015 (*Peacock v Kalikow*, 239 AD2d 188, 189 [1997]).* Given the "handshake lease," which was not memorialized in an arm's length formal agreement, the timing of the transfer, which, at or about the date CMS ceased operations, either rendered CMS insolvent or was made at a time when CMS was insolvent, and the amount of the transfer, we find, contrary to the dissent's opinion, that the Partnership's affidavit in support, which does not dispute these facts and can only be characterized as conclusory, is insufficient to show a meritorious defense to the action.

A conveyance that renders the conveyor insolvent is fraudulent as to creditors without regard to actual intent, if the conveyance was made without fair consideration (Debtor and Creditor Law § 273). Also fraudulent are conveyances made without fair consideration when the conveyor "intends or believes that he will incur debts beyond his ability to pay as they mature" (Debtor and Creditor Law § 275). An antecedent debt can constitute fair consideration (*Matter of American Inv. Bank v Marine Midland Bank*, 191 AD2d 690, 692 [1993]). However, in the absence of a copy of the lease between CMS and the Partnership, invoices or rent history records evidencing proof of the monthly rental obligation and the total amount of arrears, the Partnership fails to demonstrate a bona fide debt, antecedent or otherwise. The rule that a debtor may generally favor one creditor over another (*see Ultramar Energy v Chase Manhattan Bank*, 191 AD2d 86, 90-91 [1993]) is not a license to engage in sham transactions in furtherance of that preference.

---

* While the failure to file a change of address with the Secretary of State pursuant to Business Corporation Law § 306 (b) (1), which is analogous to Partnership Law § 121-104, generally is not a reasonable excuse under CPLR 5015 (a) (1) (*Crespo v A.D.A. Mgt.*, 292 AD2d 5, 9-10 [2002]), relief under CPLR 317 does not necessitate a showing of a reasonable excuse for the delay (*Eugene Di Lorenzo, Inc. v A.C. Dutton Lbr. Co.*, 67 NY2d 138, 141-142 [1986]).

We further reject the notion that CMS's payment to its creditors in an arbitrarily reduced rate across the board constituted fair consideration. We note that CMS paid many of its other suppliers and creditors in full with the personal credit cards of its shareholders and that the luxury automobile leases, for which Kober and Orenstein were personally liable, were paid an extra month in advance. In addition, uncontroverted bank records show that CIT's claim exceeded CMS's assets, rendering CMS either insolvent or nearly insolvent at the time of the subject payment.

Even assuming, arguendo, that the payment was made in partial satisfaction of a bona fide antecedent debt, it was not made in good faith. "Good faith is required of both the transferor and the transferee, and it is lacking when there is a failure to deal honestly, fairly, and openly" (*Berner Trucking v Brown*, 281 AD2d 924, 925 [2001] [citation omitted]; *see also Smith v Kanter*, 273 AD2d 793, 795 [2000]). Transfers to a controlling shareholder, officer or director of an insolvent corporation are deemed to be lacking in good faith and are presumptively fraudulent (*A.F.L. Falck, S.p.A. v E.A. Karay Co., Inc.*, 722 F Supp 12, 17 [1989]; *see also Julien J. Studley, Inc. v Lefrak*, 66 AD2d 208, 213 [1979], *affd* 48 NY2d 954 [1979]).

Under Debtor and Creditor Law § 276, "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." Given the "badges of fraud," which include the close relationship among the parties to the transaction, the inadequacy of consideration, CMS's knowledge of CIT's claims and its inability to pay them, and the timing of the transfer (*see Pen Pak Corp. v LaSalle Natl. Bank of Chicago*, 240 AD2d 384, 386 [1997]), Orenstein's sworn explanation that the transfer was in partial satisfaction of an antecedent rent debt does not negate the inference as to intent. Concur—Mazzarelli, J.P., Sweeny, Catterson and Malone, JJ.

Saxe, J., dissents in a memorandum as follows: I conclude that under CPLR 317, respondent 160-09 Jamaica Avenue Limited Partnership was entitled to vacatur of its default in this turnover proceeding brought by a judgment creditor against respondent as the judgment debtor's transferee. The motion seeking to vacate its default should have been granted and its proposed answer deemed served.

### Facts

Petitioner CIT Group obtained assignment of the accounts re-

ceivable owed to a clothing vendor by Central Men's Shop, a store whose place of business was located at 160-09 Jamaica Avenue, for purchases made from the vendor between May 2000 and September 2001. In an action against Central Men's Shop, petitioner obtained the underlying $61,000 money judgment on default. Petitioner then brought this proceeding against respondent 160-09 Jamaica Avenue LP for turnover of the $9,000 which Central Men's Shop had paid respondent on March 11, 2002.

Petitioner claims that this $9,000 payment constituted a fraudulent conveyance under the Debtor and Creditor Law, based upon allegations that the respondent company is owned and operated by individuals closely related to those who owned and operated Central Men's Shop, and that the payment was made without fair consideration or good faith, while Central Men's Shop was either insolvent or rendering itself insolvent by making the payment, with the actual intent to hinder, delay or defraud creditors.

Service of the petition was made through the Secretary of State pursuant to Partnership Law § 121-104. Following respondent's failure to answer, petitioner obtained the underlying default judgment against respondent.

Respondent then moved to vacate its default pursuant to CPLR 5015 and 317, asserting that petitioner's service of process on the Secretary of State had resulted in delivery of the petition to the premises of 160-09 Jamaica Avenue, and since respondent was an absentee landlord which did not maintain any office there, and in fact had relet the space to another tenant, it did not receive the papers. On the issue of its meritorious defense, it asserted that the $9,000 was partial payment of an antecedent rent debt totaling $27,000 for the period of July 1, 2001 to March 31, 2002, which payment Central Men's Shop made in good faith as part of its attempts to pay each of its creditors about 30% across the board. Specifically, Central Men's Shop vice-president Seth Orenstein stated that for the six months between the fall of 2001, when they decided to close the store, until its actual closing in April 2002, he and its president drew no salary, and generally attempted to pay their creditors 30% of sums due. Although such a cash payment was not possible in the case of petitioner's assignor, Central Men's Shop returned existing merchandise it had in its possession from this vendor, which merchandise had a value of at least one third of the amount it sought; in this manner, he claimed, this creditor was treated equally.

Petitioner disputed this contention, arguing that the officers

of Central Men's Shop paid 100% of the bills relating to their own expenses, such as automobile leases, and pointing out that the alleged partial payment of $9,000 in overdue rent was on an admittedly "handshake lease" with a company owned and run by individuals related to those who owned and ran Central Men's Shop.

The motion court only addressed the CPLR 5015 grounds for vacatur, and denied the application with the reasoning that respondent failed to establish a reasonable excuse, because service was properly made upon the Secretary of State, and the failure to keep the Secretary of State apprised of a corporation's current address is not a reasonable excuse. The court also found respondent's self-characterization as an absentee landlord to be disingenuous, given the evidence of cross-ownership between respondent and Central Men's Shop. The court did not address the issue of whether respondent had a meritorious defense.

### Discussion

Since respondent sought relief under both CPLR 5015 *and* 317, the motion court erred in failing to address the latter (*see D & D Asphalt Constr. Corp. v Corealty, LLC*, 296 AD2d 432 [2002]).

CPLR 317 authorizes vacatur of a default where service of process was made through the Secretary of State, if the respondent did not receive actual notice of the action in time to answer the complaint. The defendant need not show an excuse for the default—or even a reasonable excuse for failure to file a change of address with the Secretary of State—as long as it did not receive notice of the action and a meritorious defense is demonstrated (*see Simon & Schuster v Howe Plastics & Chems. Co.*, 105 AD2d 604, 605 [1984]). Although a defendant who *deliberately* attempts to avoid service by failing to designate a new registered agent with the Secretary of State may not avail itself of CPLR 317, there is no basis in the record for finding such deliberate avoidance here (*see Eugene Di Lorenzo, Inc. v A.C. Dutton Lbr. Co.*, 67 NY2d 138, 143 [1986]; *Raiola v 1944 Holding*, 1 AD3d 296 [2003]; *Grosso v MTO Assoc. Ltd. Partnership*, 12 AD3d 402 [2004]).

Respondent's showing of a meritorious defense, even if not overwhelmingly compelling, was nonetheless sufficient to allow it to proceed on the merits. This was not a summary judgment motion, and respondent need not establish its defense as a matter of law. All it had to do was demonstrate the existence of a *"potentially* meritorious" defense (*see Marinoff v Natty Realty Corp.*, 17 AD3d 412, 413 [2005]).

With respect to the fraudulent conveyance claims under Debtor and Creditor Law §§ 273 and 275, petitioner has the burden to demonstrate both the lack of fair consideration and insolvency, which are generally issues of fact (*see Epstein v Nieves*, 258 AD2d 436 [1999]). A determination that the payment was per se unfair and paid to create insolvency or while insolvent is precluded here by the sworn statement of Seth Orenstein, asserting that the $9,000 payment was in partial satisfaction of an antecedent rent debt, paid in proportion to other partial payments of debts, and that Central Men's Shop continued to pay creditors, in part, through April 2002, until petitioner seized its bank account on April 25, 2002. It would be inappropriate to reject these assertions on credibility grounds in this context.

As long as the challenged payment was repayment of an actual antecedent debt, it may not be overturned even if the debtor was insolvent at the time, or even if its effect was to prefer one creditor over another (*Ultramar Energy v Chase Manhattan Bank*, 191 AD2d 86, 90-91 [1993]). Although the appearance of a preference given to an entity controlled by the debtor's family, in relation to a "handshake lease" rather than an arm's length formal lease agreement, certainly creates a question of fact, it does not establish per se that Central Men's Shop had no overdue rent obligation (*see Matter of Mega Personal Lines, Inc. v Halton*, 9 AD3d 553, 556 [2004]).

As to Debtor and Creditor Law § 276, the provision covering actual fraud, there is no need to prove insolvency or unfair consideration, and the pleader is permitted to rely on "badges of fraud" to show actual intent to defraud or hinder present or future creditors (*Wall St. Assoc. v Brodsky*, 257 AD2d 526, 528-529 [1999]). While the intrafamily nature of the $9,000 transfer may constitute such a badge of fraud, placing a heavier burden on the transferee to establish fairness (*see id.* at 528; *Rasabi v Rasabi*, 7 AD3d 451 [2004]; *Insilco Corp. v Star Servs., Inc. of Del.*, 2 AD3d 343, 344 [2003]), such "badge" merely permits an inference of fraudulent intent. It is not conclusive, particularly in light of Orenstein's sworn explanation, which presents an issue of credibility.

Accordingly, respondent's default should have been vacated, leaving the merits of petitioner's claims and respondent's defenses to a more appropriate fact-finding setting.