12-4088-cv
*Franconero v. UMG Recordings, Inc.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of October, two thousand thirteen.

Present:
> PIERRE N. LEVAL,
> RICHARD C. WESLEY,
> PETER W. HALL,
> > *Circuit Judges*.

_____

CONNIE FRANCONERO, PKA CONNIE FRANCIS,

> *Plaintiff-Appellant,*

> v.                                                          No. 12-4088-cv

UMG RECORDINGS, INC.,

> *Defendant-Appellee*.

_____

For Appellant:          PAUL S. SIGELMAN, Sigelman Law Corporation,
                        Beverly Hills, CA

For Appellee:           ANDREW H. BART, CARLETTA F. HIGGINSON,
                        Jenner & Block LLP, New York, NY

Appeal from the United States District Court for the Southern District of New York (Jones, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the United States District Court for the Southern District of New York is **AFFIRMED**.

Plaintiff-Appellant Connie Franconero, professionally known as Connie Francis ("Francis"), appeals from the district court's September 21, 2012 judgment, entered pursuant to its February 11, 2011 memorandum and order which, *inter alia*, granted summary judgment to Defendant-Appellee UMG Recordings, Inc. ("UMG") on Francis's claim for breach of contract and denied Francis leave to amend her complaint. We assume the parties' familiarity with the underlying facts, the procedural history and the issues presented for review.

We review the district court's grant of summary judgment *de novo. 10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co.,* 634 F.3d 112, 119 (2d Cir. 2011). Francis alleges that UMG breached her contract rights by including certain of her recordings on albums that include songs by other artists, a practice known as "coupling," without her permission. Francis's asserted rights derive from contracts entered into by MGM Records ("MGM"), UMG's predecessor in interest. In 1959, Francis herself and MGM entered into a recording contract, which they amended in 1962 to provide that MGM "shall not couple your recordings with those of any other artist without your

consent." Joint App'x 402. In 1966, MGM entered into a recording contract with G.G.C. Productions Corp. ("G.G.C."), Francis's production company, providing that "[a]ll of the terms and conditions of the [1959 agreement, as amended] shall be applicable hereto as if fully set forth herein." *Id.* at 413.

Before the district court, in moving for summary judgment on Francis's breach of contract claim, UMG argued, *inter alia*, that (1) a 1982 agreement between Francis, personally, and PolyGram Records, Inc., a UMG predecessor, extinguished the requirement that UMG obtain Francis's permission before coupling; and (2) Francis failed to offer evidence of compensable damages resulting from the alleged breach. The district court agreed with both arguments and granted UMG summary judgment.

We affirm on the second ground.[1] Francis's initial purported proof of damage was the expert report of Arthur L. Erk, a certified public accountant. Erk's report measures Francis's damages as all revenue UMG received from the sale of albums coupling Francis's recordings and does not consider how the sale of such albums affected the sale of other Francis albums. Because the report does not opine that the sale of coupled albums decreased the sale of other Francis albums and does not show a decrease

[1] While the district court may have been correct in ruling that the 1982 agreement extinguished the requirement that UMG obtain permission before coupling Francis's recordings, we refrain from ruling on that ground because we are uncertain of the answers to certain potentially important questions. Given the terse formulation of G.G.C.'s 1966 contract, it is not clear to us whether the right established by that contract to bar coupling belonged to Francis or to G.G.C., or whether Francis's subsequent relinquishment of her right could effectively terminate G.G.C.'s right. Furthermore, assuming the right under the 1966 contract belonged to G.G.C., and not to Francis, it is not clear whether by 1982 Francis had acquired G.G.C.'s right.

in Francis's royalties from the sale of non-coupled albums corresponding to UMG's revenue from the sale of coupled albums, the report expresses no basis for its conclusion that Francis suffered damages in the amount of UMG's revenue from the sale of coupled albums. *See U.S. Naval Inst. v. Charter Commc'ns, Inc.*, 936 F.2d 692, 696 (2d Cir. 1991) ("Since the purpose of damages for breach of contract is to compensate the injured party for the loss caused by the breach, those damages are generally measured by the plaintiff's actual loss. While on occasion the defendant's profits are used as the measure of damages, this generally occurs when those profits tend to define the plaintiff's loss, for an award of the defendant's profits where they greatly exceed the plaintiff's loss and there has been no tortious conduct on the part of the defendant would tend to be punitive, and punitive awards are not part of the law of contract damages." (citations omitted)); *Freund v. Washington Square Press, Inc.*, 34 N.Y.2d 379, 382 (1974) ("Money damages are substitutional relief designed . . . to put the injured party in as good a position as he would have been put by full performance of the contract, at the least cost to the defendant," and "the injured party should not recover more from the breach than he would have gained had the contract been fully performed." (citations and internal quotation marks omitted)).

In opposition to UMG's motion for summary judgment, Francis submitted an affidavit by Erk, in which Erk opined that UMG's coupling diminished sales of Francis's other albums and calculates a loss suffered by Francis as a result of that diminishment. Because this opinion was not included in Erk's earlier report delivered by Francis to

UMG, and Francis did not justify that omission, the new opinion was not admissible by means of Erk's later affidavit. Federal Rule of Civil Procedure 26(a)(2)(B)(i) requires that an expert report contain "a complete statement of all opinions the witness will express and the basis and reasons for them," and Rule 37(c)(1) provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) . . . the party is not allowed to use that information . . . to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." *See Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co., Ltd.*, 769 F. Supp. 2d 269, 279 (S.D.N.Y. 2011) ("Pursuant to Rule 26 of the Federal Rules of Civil Procedure, courts will not admit supplemental expert evidence following the close of discovery when it expound[s] a wholly new and complex approach designed to fill a significant and logical gap in the first report, as doing so would eviscerate the purpose of the expert disclosure rules." (internal quotation marks omitted)).

Francis also submitted her own affidavit in opposition to UMG's motion for summary judgment, which stated in relevant part, "During the mid 1990s through 2005, sales of my full playing albums decreased while sales of UMG compilation albums containing my most popular singles increased. But for UMG's breach of the anti-coupling clause I would have received more record royalties from the sale of long playing albums (i.e. CDs) containing 10 or more of my songs." Joint App'x 183. As Francis was not the seller of her albums, she necessarily had to rely on information received from others to make assertions of increases and decreases in sales. But her affidavit furnished no

information as to a basis for her statement. She was not a competent source of evidence on these facts.[2] Francis's affidavit failed to provide sufficient evidence of compensable damages to sustain her claim. *See Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996) ("Though we must accept as true the allegations of the party defending against the summary judgment motion, drawing all reasonable inferences in his favor, conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." (citation omitted)). Because Francis failed to offer competent evidence of compensable damages resulting from the alleged breach, her breach of contract claim fails. *See LNC Invs., Inc. v. First Fid. Bank, N.A. New Jersey*, 173 F.3d 454, 465 (2d Cir. 1999) ("Under New York law . . . [t]he failure to prove damages . . . is fatal to [a] plaintiff's breach of contract cause of action." (footnote and internal quotation marks omitted)).

After UMG's motion for summary judgment was fully briefed, Plaintiff sought leave to amend her complaint to include a claim for money had and received. The district court denied leave to amend on the basis of undue delay and futility.[3] "We review a district court's decision to grant or deny a party leave to amend a pleading under Federal Rule of Civil Procedure 15(a) for abuse of discretion." *Grochowski v. Phoenix Constr.*,

[2] Nor does her affidavit indicate whether any changes in sales were more than trivial.

[3] Because we conclude that it was within the district court's discretion to deny leave to amend because of undue delay, we need not and do not address the district court's alternative basis for denial of futility.

318 F.3d 80, 86 (2d Cir. 2003). A district court abuses its discretion if it "base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or render[s] a decision that cannot be located within the range of permissible decisions." *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (citations and internal quotation marks omitted).

"Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend 'shall be freely given when justice so requires,' it is within the sound discretion of the district court to grant or deny leave to amend. A district court has discretion to deny leave for good reason, including . . . undue delay." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citations omitted). In denying leave to amend, the district court correctly observed that the request was made while UMG's potentially dispositive motion for summary judgment was fully briefed and nearly nine years after the operative complaint was filed, with no justification for the delay. The district court did not abuse its discretion in denying leave to amend. *See MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 157 F.3d 956, 962 (2d Cir. 1998) ("[T]he district court plainly has discretion to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is made for the delay, and the amendment would prejudice the defendant. The burden to explain a delay is on the party that seeks leave to amend." (citation and internal quotation marks omitted)).

For the foregoing reasons, the judgment of the district court is hereby

**AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK