OPINION OF THE COURT
Walter J. Relihan, Jr., J.
The plaintiff, Commissioner of the Tioga County Department of Social Services, brings an action to recoup moneys paid from Medicaid funds for home care and nursing home services rendered to defendant’s wife between December 1990 and December 1996, plus interest and attorney’s fees. Plaintiff now moves for summary judgment. Defendants agree that no disputed questions of fact are present and cross-move for summary judgment.
Plaintiff contends that the financial resources of the defendant husband were available at all times during the period in question, should have been called upon to pay the Medicaid costs, and were sufficient to render his wife ineligible for *998 Medicaid benefits. The defendant rejoins that his assets were unavailable, having been transferred to an irrevocable trust well before he applied for benefits on behalf of his wife.
The trust was created in 1987. The defendant is the grantor and two of his children are the trustees. The trustees are empowered to make such distributions to him, from income and principal, as they deem necessary to support his standard of living as it existed at the time the trust was created. The grantor’s children, among them the two trustees, share any remainder upon termination of the trust. Lastly, and significantly, the grantor retains a power to change beneficiaries, excluding only himself, his spouse, or the creditors of either. As a practical matter, a power to change the remainder interests in a self-settled trust is very nearly a power to dispose of the principal (cf., Matter of Reynolds, 87 NY2d 633, 638). By April 1989, the corpus included $205,000 in liquid assets, plus a remainder interest in the marital home. By December 1990, when the initial application for assistance was filed, the liquid assets had grown to $276,491. The value of these assets more than doubled by December 1997. For Federal income tax purposes, all trust income, whether distributed or reinvested in corpus, is deemed income to the grantor (26 USC § 671 [Internal Revenue Code]).
In December 1990, the defendant applied for Medicaid home care assistance stating that his wife had insufficient income and resources to pay for her own care. In January 1991 he gave the Commissioner a statement refusing to provide any support for her. From that date to December 1993, plaintiff avers, defendant made no disclosure of his assets, including the trust. Between January 1992 and March 1994, he also transferred about $29,000 to a daughter. Finally, plaintiff states, partial disclosure occurred in December 1993 but full facts were not elicited until after this action was commenced in December 1997. Defendant says that his initial statement of 1990 was given to the Commissioner on the advice of counsel and that, as early as March 1991, the existence of the trust was mentioned in a bank clearance letter to the Department of Social Services.
In November 1993, a new application was submitted by defendant for nursing home care assistance for the wife. This time defendant disclosed the existence of the trust and reported his income including, his counsel asserts, income from the trust. While the trustees made no distribution to the settlor during the preceding years, except to pay taxes on accrued *999 trust income, the application was neither entirely candid nor wholly truthful. It reports, for example, that neither spouse was the beneficiary of a trust.
On the basis of the facts which the plaintiff claims were submitted on the application form, the Department determined that Medicaid assistance to the wife was merited and that the husband was responsible for only modest monthly contributions toward her nursing home care. Accordingly, the previous payments of home care assistance were succeeded by nursing home payments. These benefits, together, reached the total sum of $131,774 before the wife’s death in December 1996.
Section 366 (3) (a) of the Social Services Law requires that Medicaid assistance shall be furnished to applicants, even though a responsible relative with sufficient resources can be found, where the relative fails or refuses to provide such support. “In such cases, however, the furnishing of such assistance [by the public agency] shall create an implied contract with such relative, and the cost [of such services] may be recovered from such relative” (Social Services Law § 366 [3] [a]). It is this contract, implied by the statute, which the plaintiff seeks to enforce. Section 101 of the Social Services Law provides that a spouse, of sufficient financial ability, is responsible for the care of a recipient of public assistance. Clearly, the Medicaid program is intended to be the “payor of last resort” (Calvanese v Calvanese, 93 NY2d 111, 116). It is not disputed that the husband would have been found to possess assets sufficient to pay for the home and nursing facility costs, borne by plaintiff between 1990 and 1996, if the trust assets had been “available” to defendant during that period.
We turn to that question: EPTL 7-3.1 (a) provides that a “disposition in trust for the use of the creator is void as against * * * subsequent creditors.” Judicial interpretation has now made it clear that any amount which the trustees are empowered to pay to the settlor of a trust, under any circumstance, is within the reach of creditors (State of New York v Coyle, 171 AD2d 288, 290; Vanderbilt Credit Corp. v Chase Manhattan Bank, 100 AD2d 544). In Vanderbilt, the trustees were empowered to invade principal for the benefit of the settlor if, in their judgment, net income was “insufficient.” The Court reasoned that (at 546): “Since no standard by which to measure insufficiency of the net income is provided, the trustee has absolute discretion * * * to pay any amount of the principal to the settlor-beneficiary” and, consequently, that creditors were entitled to reach the entire corpus. In Coyle (171 AD2d, at *1000 290), by contrast, the trustees were empowered to distribute net income to the grantor but were forbidden to invade principal “ ‘except for luxuries not provided by public welfare funds or medical insurance.’ ” Again, the trust indenture gave no clue as to how the extent of such “luxuries” should be measured and calculated. Without further discussion of the point, the Court held that “the entire amount of the corpus is available to satisfy defendant’s obligations to plaintiff’ (171 AD2d, at 290).
We conclude that the “standard of living” criterion, found in the defendant’s trust, is no less amorphous and unconstrained than the “insufficiency” of Vanderbilt (supra) and the “luxuries” of Coyle (supra). Hence, we conclude that the entire corpus of the trust created by defendant was available to him for the benefit of his wife within the meaning of the EPTL and that defendant is bound by the statutory implied contract to provide the necessary care and assistance to his spouse (see also, Social Services Law §§ 101, 104). Federal legislation, presumably preemptive in respect to Federal Medicaid funds and participating State funds, echoes State law. From 1986 until amended in 1993, 42 USC former § 1396a (k) provided that all assets and income that lawfully could be distributed to the creator of a self-settled trust must be considered available to the grantor for Medicaid purposes. Later amendments, affecting trusts created after 1993, changed the language but not the intent of prior law (see, Omnibus Budget Reconciliation Act of 1993, Pub L 103-66, 107 Stat 627, repealing provisions of 42 USC § 1396a [k], and amending § 1396a [a] [18] and § 396p).
Defendants contend that the plaintiffs claim is barred by the six-year period of limitations applicable to express or implied contracts (CPLR 213 [2]). In particular, defendants claim that the statute began to run when plaintiff, knowing of the trust, authorized the home assistance payments in early 1991, more than six years before this action was commenced. We disagree. Section 104 of the Social Services Law establishes the pertinent period of limitations and provides that the public agency may recover the cost of services rendered during the preceding 10 years. The action was commenced in December 1997. The costs were incurred within the prior 10 years. The action is timely. The mere fact that the Tioga County Department of Social Services knew or reasonably should have known of the trust in 1991, but neglected to pursue prompt enforcement efforts, does not defeat the present action. As the Court of Appeals has only recently reiterated, a mere administrative *1001 error by a governmental agency does not estop the agency from correcting such mistakes (Oxenhorn v Fleet Trust Co., 94 NY2d 110).
Plaintiff also contends that the husband’s transfer of assets to the trust in November 1987 was fraudulent as to future creditors (Debtor and Creditor Law § 275). Concededly, the trust was designed to shelter assets from possible future estate tax liability and claims by medical service providers. Cautionary estate planning may run afoul of Medicaid regulations but the 1987 creation of the trust cannot be considered fraudulent under the Debtor and Creditor Law unless the facts and circumstances which invoke the statute have been established. There is no evidence that, in 1987, defendant was either insolvent or knew he would incur debts beyond his ability to pay. In fact, no such occasion arose until December 1990, some three years later. Hence, plaintiff cannot succeed under section 275 which requires proof that defendant had some “good indication of oncoming insolvency” (Matter of Shelly v Doe, 249 AD2d 756, 758). The fact that only a minimal distribution of income from the trust to the defendant occurred following 1987 is persuasive evidence to the contrary.
Given the continued solvency of defendant after 1987, the plaintiff must show, by clear and convincing evidence, that defendant intended to hinder, delay, or defraud the plaintiff by creating the trust in order to recover under section 276 of the Debtor and Creditor Law (Marine Midland Bank v Murkoff, 120 AD2d 122, 126). The circumstantial factors (i.e., “badges of fraud”) which bear on the issue of actual intent, under section 276, are decidedly mixed in this case (see, Matter of Shelly v Doe, supra, at 758). While the relationships between settlor and the trustees/remaindermen are close, there was no secrecy or duplicity in the 1987 creation of the trust and no evidence that settlor knew, at the time, that medical costs exceeding his capacity to pay would descend upon him in consequence of a future protracted illness of his spouse. Since both parties agree that the facts are not in dispute, we conclude, as a matter of law, that plaintiff has failed to show, by the required clear and convincing evidence, that the 1987 transfer was intentionally fraudulent.
The plaintiff’s claim for counsel fees, being dependent upon the applicability of the Debtor and Creditor Law, must be denied. The Commissioner is entitled to recover the sum demanded from the trustees, with interest from the commencement of this action. The failure of the Department to pursue *1002 its information that a trust existed, while no bar to the correction of an error, should not be rewarded by an allowance of interest from February or March 1991.
The cross motion is denied and the motion is granted, to the extent indicated, with costs.