GRACE PLAZA OF GREAT NECK, INC., Respondent, v MAXINE HEITZLER, Appellant. [770 NYS2d 421]—

In an action, inter alia, to set aside a conveyance pursuant to Debtor and Creditor Law article 10, the defendant appeals from an order of the Supreme Court, Queens County (Dye, J.), dated January 8, 2003, which denied her motion for summary judgment dismissing the complaint.

Ordered that the order is reversed, on the law, with costs, the motion is granted, and the complaint is dismissed.

On January 8, 1996, the defendant's 81-year-old mother, Estelle Witt, entered a nursing home owned and operated by the plaintiff. Approximately nine months later, in September 1996, Mrs. Witt received the sum of $659,532 in settlement of a medical malpractice action. It is undisputed that Mrs. Witt gave over $350,000 of the settlement funds to the defendant and other family members. However, even after transferring these funds, Mrs. Witt retained over $342,700 in various bank and brokerage accounts. Mrs. Witt left the plaintiff's facility in November 1999, and moved to a nursing home in Texas. Approximately three months later, the plaintiff commenced this action, inter alia, to recover a balance of $26,610.73 allegedly due for Mrs. Witt's care, upon the theory that the September 1996 fund transfers to the defendant and other family members constituted fraudulent conveyances pursuant to Debtor and Creditor Law §§ 273, 275, and 276. After discovery was conducted, the defendant moved for summary judgment, contending that the September 1996 fund transfers were not fraudulent conveyances because they did not render her mother insolvent, and were not made with the intent to defraud credi-

tors. The Supreme Court denied the motion, concluding, inter alia, that there were issues of fact as to whether Mrs. Witt had a "good indication" of future insolvency when she transferred funds to her family in September 1996, and whether she made the transfers with intent to defraud. We now reverse.

Pursuant to Debtor and Creditor Law § 273, a conveyance made by a person who will be rendered insolvent thereby is fraudulent as to creditors, without regard to his or her actual intent, if the conveyance is made without fair consideration. An individual is "insolvent" within the meaning of the Debtor and Creditor Law when "the present fair salable value of his [or her] assets is less than the amount that will be required to pay his [or her] probable liability on . . . existing debts as they become absolute and matured" (Debtor and Creditor Law § 271 [1]). Here, in support of her motion for summary judgment, the defendant submitted uncontroverted evidence that her mother, now deceased, retained cash assets of over $342,700 after the subject intra-family transfers, and that she continued to receive a pension and social security benefits. Furthermore, there is no evidence that Mrs. Witt had outstanding debts to the plaintiff nursing home, or any other creditor, when the transfers were made in September 1996. Under these circumstances, the transfers did not render Mrs. Witt insolvent (*see St. Teresa's Nursing Home v Vuksanovich*, 268 AD2d 421 [2000]), and thus were not fraudulent conveyances within the meaning of Debtor and Creditor Law § 273.

Furthermore, the September 1996 transfers cannot be deemed fraudulent as to creditors pursuant to Debtor and Creditor Law § 275. Debtor and Creditor Law § 275 provides that a conveyance made without fair consideration at a time when the person making the conveyance "intends or believes that he [or she] will incur debts beyond his [or her] ability to pay as they mature, is fraudulent as to both present and future creditors." Pursuant to this constructive fraud provision, a conveyance made by a person who has a "good indication of oncoming insolvency" is deemed to be fraudulent (*Matter of Shelly v Doe*, 249 AD2d 756, 758 [1998]). Here, however, taking into account the rates charged by the facility at the time the transfers were made, it cannot be said that Mrs. Witt had a "good indication" that the funds she retained would be insufficient to pay for her nursing home care during the three-year period she would be required to wait in order to become eligible for Medicaid assistance (*Matter of Shelly v Doe, supra; see Case v Fargnoli*, 182 Misc 2d 996, 1001 [1999]; *see also Matter of John XX.*, 226 AD2d 79 [1996]).

Finally, we find no basis to set aside the transfers pursuant to Debtor and Creditor Law § 276, which provides that "[e]very conveyance made . . . with actual intent . . . to hinder, delay, or defraud either present or future creditors" is fraudulent. While creditors may rely upon circumstantial factors deemed "badges of fraud" to establish an inference of fraudulent intent (*White Rose Food v Mustafa*, 251 AD2d 653, 654 [1998]; *see Matter of Shelly v Doe, supra; Pen Pak Corp. v LaSalle Natl. Bank of Chicago*, 240 AD2d 384 [1997]), here the evidence submitted in support of the motion demonstrated that Mrs. Witt retained assets reasonably calculated to cover the cost of her care for the three-year period she would be required to wait until she became eligible for Medicaid benefits. Although the plaintiff contends that this conduct was fraudulent, at the time the transfers were made, no penalty could be imposed upon an individual for transferring assets more than three years before his or her application for Medicaid (*see Matter of John XX., supra*). Under these circumstances, Mrs. Witt's decision to make gifts to her family while retaining assets reasonably calculated to cover the cost of her care until she became eligible to receive Medicaid assistance cannot be considered acts of intentional fraud against future creditors (*see Matter of John XX., supra; see also Matter of Shah*, 257 AD2d 275, 283 [1999], *affd* 95 NY2d 148 [2000]). Krausman, J.P., McGinity, Schmidt and Rivera, JJ., concur.