OPINION OF THE COURT
Tom, J.P.
At issue is whether defendant Sofia Frankel’s conveyance of a Manhattan condominium apartment to her son, defendant Michael Frankel, was constructively fraudulent pursuant to Debtor and Creditor Law §§ 273-a and 278. This Court concludes that the transaction fails to comply with the good faith requirement of section 272 of the statute and was without fair consideration. Thus, the transfer was properly set aside.
During the time Sofia Frankel was employed as a broker for Goldman Sachs & Co., plaintiffs entrusted her with some $19 million to invest on their behalf, and they remained her clients when she later left Goldman to join Lehman Brothers, Inc. By 2004, however, plaintiffs alleged that they had sustained more than $9.6 million in losses as a result of Sofia’s fraudulent churning of their account. They commenced arbitration proceedings before the Financial Industry Regulatory Authority (FINRA) in May of that year, naming Sofia and Lehman Broth *138 ers as respondents. On October 30, 2008, some two weeks before Lehman filed for bankruptcy protection, an arbitration panel rendered an award in the amount of $2.5 million, holding Sofia and Lehman jointly and severally liable for plaintiffs’ losses. This Court affirmed Supreme Court’s confirmation of the award, expressly rejecting Sofia’s contention that the arbitrators had improperly imposed joint and several liability (Frankel v Sardis, 76 AD3d 136 [1st Dept 2010]).
Within days after the October 2008 award was issued, Sofia met with David Pratt, a partner at the firm of Proskauer Rose LLfi to engage the firm’s services. Proskauer’s attorney time records for November 2008 describe a conversation of November 7 “with Sofia and Michael re: asset protection plan,” followed two days later by a conversation “with Michael Frankel re: asset protection planning.” The various items under consideration included the “sale/transfer of NY Condos,” “homestead waiver issues,” the “option of filing claim in bankruptcy court to obtain indemnification for arbitration award” and “efforts to identify insurance coverage or indemnification for arbitration award.”
At the time the award was rendered, Sofia’s assets included (1) a beachfront condominium apartment in Miami Beach, Florida owned with her husband, Yan Frankel, as tenants in the entirety and claimed as a homestead; (2) a condominium apartment in Manhattan also owned with her husband as tenants in the entirety; (3) a condominium apartment in Manhattan owned by Sofia in fee simple (the subject apartment); (4) a 100% ownership interest in Applied Medicals LLC, a medical supply company headquartered in Florida; and (5) sole interest in a Fidelity Investment account valued at $4,052,813.16.
The asset protection plan was put into action in early 2009. In January, Sofia withdrew $3,296,431.51 from her Fidelity account, depleting its value to $16,371.88. That same month, she paid $2.9 million in cash for another beachfront condominium apartment in Miami Beach, title to which is unencumbered and held solely in her name. This property, also claimed by Sofia as a homestead, is the subject of another action pending in MiamiDade County, Florida.
At some time before August 25, 2009, Sofia’s sole interest in Applied Medicals LLC was relinquished when Michael became a 10% member of the company. Florida law provides that a court may “order a judgment debtor to surrender all right, title, and interest in the debtor’s single-member LLC to satisfy an outstanding judgment” (Olmstead v Federal Trade Comma., 44 *139 So 3d 76, 78 [Fla 2010]), but limits the court to issuing a “charging order” against a debtor’s ownership interest in a multimember limited liability company (id. at 79).
Finally, on February 20, 2009, Sofia transferred fee simple title to the subject apartment, which had previously been appraised at $1,175 million, to Michael for one dollar and other valuable consideration. This action to set aside the conveyance ensued.
The complaint alleges five causes of action: (1) fraudulent conveyance in violation of Debtor and Creditor Law §§ 273-a and 278; (2) fraudulent conveyance in violation of Debtor and Creditor Law §§ 275 and 278; (3) fraudulent conveyance in violation of Debtor and Creditor Law §§ 276, 276-a and 278; (4) resulting trust under section 7-1.3 of the Estates, Powers and Trusts Law; and (5) constructive trust. In their respective answers, defendants alleged that they had entered into an oral agreement in late 1999 under which Michael was to purchase the apartment and, thus, they assert that the conveyance of the premises in February 2009 was merely the culmination of defendants’ existing obligations under this agreement.
Thereafter, plaintiffs moved for summary judgment on the record. Defendants submitted opposing affidavits outlining the terms of the 1999 oral agreement.[1] Michael was to take immediate possession of the apartment and assume the expenses for monthly mortgage payments, property taxes, water and sewer charges, the common charges of the condominium association and any renovations and improvements. A reasonable market value of the apartment was to be ascertained in 2009, when Michael attained 30 years of age, at which time the transfer of title to Michael was to be effected in exchange for his promise to pay the remainder of the purchase price. Also to be resolved were various credits for tax deductions taken by Sofia for interest and taxes paid by Michael over the past decade.[2]
In their opposing affidavits, defendants suggest that Michael’s payment of the carrying charges over the last 10 years constitutes past consideration for their written 2009 agreement to transfer the premises and, as expressed by Sofia, that such amount is not “disproportionately small when viewed in the context of the entire transaction.” Apart from their self-serving *140 affidavits, the only evidence in connection with their purported 1999 agreement consists of the documents associated with the February 2009 transfer of title, which include a December 2008 appraisal report setting the value of the premises at $1,175 million as of November 26, 2008 and a bargain and sale deed dated February 23, 2009. Michael executed a contemporaneous promissory note and mortgage providing for a balloon payment in the amount of $969,265.56 due in February 2039 and monthly interest payments in the amount of $2,390.85 at a rate of 2.96% in the interim.
Supreme Court granted summary judgment on plaintiffs’ first cause of action. The court reasoned that while payment of the carrying expenses might constitute past consideration sufficient to make out a valid contract, such consideration must be expressed in a writing (General Obligations Law § 5-1105). Because the documentary evidence does not show that the past consideration “was bargained for in exchange for a promise to sell buyer the unit . . . expressed in writing as payments of a sum certain at a date certain and said to be consideration for the promise,” the court held that defendants had failed to demonstrate that such payments comprise fair consideration under Debtor and Creditor Law § 272 (2012 NY Slip Op 32601[U], *6, citing Delacorte v Transcontinental Land & Cattle Corp., 127 Misc 2d 707, 709 [Sup Ct, NY County 1985]).
On appeal, defendants argue that summary judgment was improperly granted because genuine issues of fact preclude the finding that the transfer of the condominium apartment to Michael was constructively fraudulent. They contend that Michael took title to the premises in good faith as part of an executory contract with his mother to convey the property to him on his 30th birthday. Further, defendants assert that the motion court improperly applied the statute of frauds to void their 2009 agreement transferring title to Michael.
As this Court observed long ago, “It is difficult to see how the [s]tatute of [fjrauds can be availed of to set aside a completed transaction” (De Hierapolis v Reilly, 44 App Div 22, 24 [1st Dept 1899], affd 168 NY 585 [1901]). Any flaw in the motion court’s reasoning notwithstanding, the record fails to support defendants’ contention that the conveyance was made pursuant to a previous agreement rather than as part of an asset protection plan contrived to insulate property from the claims of judgment creditors.
Plaintiffs’ first cause of action alleges that the subject conveyance was fraudulent under Debtor and Creditor Law §§ 273-a *141 and 278, particularly in that defendants cannot establish fair consideration for the transfer of title. The Debtor and Creditor Law identifies two indicia of “fair consideration” for conveyed property: the adequacy of what is given in exchange for it and “good faith.” With regard to value, section 272 (a), governing a conveyance made in exchange for the property, provides for the receipt of something that is “a fair equivalent therefor,” and section 272 (b), governing an antecedent debt or present advance, applicable herein, provides for an “amount not disproportionately small as compared with the value of the property.” As to the adequacy of consideration, the parties each provide different calculations. Defendants argue, as they did below, that when Michael’s payment of expenses and the value of his improvements to the apartment, which was modest at most, during the period from 1999 to 2009 are included, fair consideration was received. Plaintiffs respond that a proper accounting of such past consideration reveals that a negative sum was received for the property on the date title was transferred.
Debtor and Creditor Law § 278 provides that a fraudulent conveyance may be set aside on behalf of a creditor whose claim has matured “as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase.” Debtor and Creditor Law § 273-a provides:
“Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.”
It is uncontested that arbitration proceedings before FINRA had been concluded and an award rendered against Sofia Frankel prior to the transfer of the condominium apartment to Michael. It is further uncontested that the ensuing judgment against Sofia has not been satisfied. An arbitration proceeding is “an action for money damages” under the statute (Dixie Yarns, Inc. v Forman, 906 F Supp 929, 936 [SD NY 1995]), and whether the conveyance should be set aside turns on whether it was made for fair consideration (see Cabrera v Ferranti, 89 AD2d 546 [1st Dept 1982], appeal dismissed 67 NY2d 869 [1986]).
“Fair consideration” under Debtor and Creditor Law § 272 is not only a matter of whether the amount given for the *142 transferred property was a “fair equivalent” or “not disproportionately small,” which the parties vigorously dispute, but whether the transaction is made “in good faith,” an obligation that is imposed on both the transferor and the transferee (Matter of CIT Group/Commercial Servs., Inc. v 160-09 Jamaica Ave. Ltd. Partnership, 25 AD3d 301, 303 [1st Dept 2006] [construing Debtor and Creditor Law § 273]; Julien J. Studley, Inc. v Lefrak, 66 AD2d 208, 213 [2d Dept 1979], affd 48 NY2d 954 [1979] [same]).[3] The determination of whether such obligation has been met is one that rests on the circumstances of the individual matter (Commodity Futures Trading Commn. v Walsh, 17 NY3d 162, 175 [2011]).
To prevail on their claim that the conveyance of the subject condominium apartment meets the requirements of Debtor and Creditor Law § 273-a, defendants must demonstrate that Sofia was a good-faith seller of the property under section 272 or that Michael Frankel was a good-faith purchaser for fair consideration without knowledge of any fraud under section 278 (see Gitlin v Chirinkin, 98 AD3d 561, 562 [2d Dept 2012]). Where the transferor has knowledge of a judgment, the transfer of funds available to satisfy the judgment made at the judgment debtor’s direction will be set aside as lacking in good faith (see Berner Trucking v Brown, 281 AD2d 924, 925 [4th Dept 2001]). Likewise, where the transferee is aware of an impending enforceable judgment against the transferor, the conveyance does not meet the statutory good faith requirement and generally will be set aside as constructively fraudulent (see Matter of Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria v Upstate Bldg. Corp., 262 AD2d 981 [4th Dept 1999]).
By citing In re Sharp Intl. Corp. (403 F3d 43, 54 n 4 [2d Cir 2005], citing HBE Leasing Corp. v Frank, 61 F3d 1054, 1059 n 5 [2d Cir 1995]) for the proposition that, in a constructive fraudulent conveyance action, the requirement to exercise good faith is limited to the transferee, defendants do not accurately portray New York law (see Matter of Bernasconi v Aeon, LLC, 105 AD3d *143 1167, 1168 [3d Dept 2013]; American Panel Tec v Hyrise, Inc., 31 AD3d 586, 587 [2d Dept 2006] [“(t)he good faith of both the transferor and transferee is an indispensable element of fair consideration”]). Good faith “is lacking when there is a failure to deal honestly, fairly, and openly” (Berner Trucking, 281 AD2d at 925). By statute, good faith on the part of the transferor under Debtor and Creditor Law §§272 and 273-a is immaterial only if it is established that the transferee received the property as a good-faith purchaser for value without knowledge of the fraud at the time of conveyance pursuant to Debtor and Creditor Law § 278. Under case law, the knowledge of the transferee may be immaterial where, as in Sharp, a transfer of property is made to satisfy a true antecedent debt (compare Ultramar Energy v Chase Manhattan Bank, 191 AD2d 86 [1st Dept 1993], with Berner Trucking v Brown, 281 AD2d 924 [4th Dept 2001], supra; see also Tap Holdings, LLC v Orix Fin. Corp., 109 AD3d 167 [1st Dept 2013] [distinguishing Ultramar Energy]). The transaction at issue in this matter was clearly not one made in exchange for the discharge of an antecedent debt, and Ultramar Energy is inapposite.
It is apparent that Sofia’s conveyance of the subject Manhattan condominium apartment to her son was but one of a series of transactions undertaken as part of an “asset protection plan” devised with the assistance of counsel immediately after the arbitration award was rendered against her. The emptying of a brokerage account, the purchase of Florida real estate claimed as a homestead and the transfer of the subject apartment held in fee simple demonstrate not merely a series of transactions coincidental to estate planning, as her affidavit intimates, but a concerted effort to place her assets beyond the reach of impending judgment creditors. Finally, the addition of Michael as a member of Applied Medicals LLC, of which Sofia was formerly the sole member, precludes plaintiffs from obtaining an order from a Florida court directing the surrender of her entire interest in the company to satisfy the award against her. Notably, defendants do not contend that Sofia acted in good faith, and the record before us affords no basis for such finding.[4]
While the lack of good faith on the part of Sofia, as transferor, affords a sufficient basis to set aside this transfer as construc *144 lively fraudulent (Berner Trucking, 281 AD2d at 925), it should be noted that Michael likewise has not provided proof sufficient to raise a triable issue of fact concerning whether he took the property as a good-faith purchaser for value without knowledge of any fraud. It is apparent that Michael was a participant in the asset protection plan from its inception, having conferred with his mother and her counsel. He was clearly instrumental to its implementation, having been installed as a member of Applied Medicals LLC to frustrate seizure of its assets and having received title to the subject premises conveyed by Sofia. While Michael’s affidavit piously recites, “I believe and submit that I have acted in good faith throughout,” he does not deny knowledge of the arbitral award at the time the premises were conveyed. He merely states, “Many years before I had even heard about FINRA arbitration proceedings with the plaintiffs, I had made a serious agreement with my parents whereby upon demonstration of financial ability, responsibility, and maturity, I would own the apartment.” Finally, while financing that provides for the repayment of the entire principal amount at the end of the term of a loan, some 30 years later, may be common in commercial real estate transactions, it is virtually unknown in residential transactions. Thus, defendants’ respective assertions that their 2009 transaction, which according to Sofia’s affidavit was the result of matters negotiated “at arms length” as early as the summer of 1999, is not borne out by the record.
The attempt to represent the conveyance of the subject apartment as simply the culmination of an outstanding agreement between mother and son is unavailing. As an initial consideration, an agreement must be sufficiently definite so that a court can ascertain and apply its terms, and the burden of establishing the provisions of a purported contract rests on the proponent (see Allied Sheet Metal Works v Kerby Saunders, Inc., 206 AD2d 166, 169 [1st Dept 1994]; Paz v Singer Co., 151 AD2d 234, 235 [1st Dept 1989]). This Court has observed that “the primary purpose of a contract is not to serve as a vehicle for litigation but to document the respective rights and obligations of the parties to a particular transaction” (Charles Hyman, Inc. v Ol *145 sen Indus., 227 AD2d 270, 275 [1st Dept 1996]) and that, where the agreement in question has not been reduced to a writing, “a formidable obstacle to its enforcement” is presented (id.). While, as defendants assert, the statute of frauds is a personal defense and their agreement (which amounts to a lease with an option to purchase) is not rendered voidable solely by the absence of a writing, the lack of corroboration of their purported contract remains material to the issue of fraud (see Durack v Wilson, 46 Misc 237, 241 [Sup Ct, Nassau County 1905]). A conveyance between family members is subject to enhanced scrutiny. As this Court has stated, “[A]n intra-family transaction places a heavier burden on defendant to demonstrate fairness” (Wall St. Assoc. v Brodsky, 257 AD2d 526, 528 [1st Dept 1999]; see also Gasser v Infanti Intl., Inc., 353 F Supp 2d 342, 354 [ED NY 2005] [“in cases where a conveyance has been made from one family member to another and the facts relating to the type of consideration are within their exclusive control, the defendant has the burden of proving the adequacy of the consideration”]; Gelbard v Esses, 96 AD2d 573, 576 [2d Dept 1983]). Defendants have not met this burden.
Even accepting the terms of the purported 1999 agreement as related by Michael in his opposing affidavit, no contract was formed. He states that at the approach of his 30th birthday, the parties would “obtain an appraisal and opinions regarding the fair rental values” and calculate a purchase price by subtracting from the arrived-at appraisal value various credits for payments made by Michael towards the mortgage, carrying charges, taxes and capital improvements less the estimated rental or use-and-occupancy value of the premises. No financing terms are set forth beyond the recital that “[t]he net balance owed would be reflected in a promissory note to my mother.”
The lack of definite terms is fatal to defendants’ contention that the transfer was made subject to an executory contract. What can be discerned from their description of their understanding is a failure to reach a binding agreement on material terms, that is, an agreement to enter into a future contract. As stated in Joseph Martin, Jr., Delicatessen v Schumacher (52 NY2d 105, 109-110 [1981] [citations omitted]), “it is rightfully well settled in the common law of contracts in this State that a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable. This is especially true of the amount to be paid for the sale or lease of real property.” It is equally true with respect to financing (see Willmott v Giarra *146 puto, 5 NY2d 250, 253 [1959]). The rule is derived from the requirement of definiteness, necessary both to permit a proper remedy to be fashioned upon breach and, as here, to ensure that a contractual obligation is not implied where the parties have not intended to be conclusively bound (see Cobble Hill Nursing Home v Henry & Warren Corp., 74 NY2d 475, 482 [1989], cert denied 498 US 816 [1990]). It is clear that the arrangement described by Michael left both the determination of the price to be paid for the property and the terms of the financing for the transaction to future negotiation. Nor do the circumstances suggest that material contract terms were to be objectively determined “by reference to an extrinsic event, commercial practice or trade usage,” such as where the price term is to be fixed by a designated third party (id. at 483). Rather, formation of a contract depended on the parties’ ability to reach agreement upon such matters as the fair appraised value of the apartment and the value of its occupancy.
That no dispute arose with regard to the contract terms is merely fortuitous. Had either party to the purported agreement chosen to ignore it, the other would have been without recourse. Nor are defendants aided by the doctrine of part performance. The amount ultimately agreed upon as the fair value for Michael’s use and occupancy of the apartment between 1999 and 2009 ($322,300) is roughly the same as the amount he actually paid in expenses for the premises during that time period ($343,733.66). Therefore, his payments are not “unequivocally referable to the oral agreement” so as to constitute “ ‘acts of part performance which go along with, relate to, and confirm the agreement, . . . and thus with the parol evidence establish the existence of the agreement’ ” (Bright Radio Labs. v Coastal Commercial Corp., 4 AD2d 491, 494 [1st Dept 1957] [internal quotation marks omitted], affd 4 NY2d 1021 [1958], quoting Wheeler v Reynolds, 66 NY 227, 231-232 [1876]). To the contrary, the facts conceded by defendants fail to demonstrate that, prior to the February 2009 conveyance of the apartment, Michael was anything more than a month-to-month tenant paying less than fair market rent for the premises. As to defendants’ suggestion that the 2009 agreement to transfer title was supported by past consideration, the amounts previously paid by Michael exceed the use and occupancy value agreed upon by defendants by a mere $21,433.66, a little more than 2% of the purchase price. As plaintiffs point out, when the transfer tax and filing charge are taken into account, the amount of past *147 consideration received by Sofia for the apartment at the time of its conveyance was a negative $11,835.09, which negates any alleged fair consideration for the purchase of the subject apartment.
In sum, the record amply demonstrates that Sofia’s transfer of the apartment to her son was made in the absence of good faith. The purported oral agreement of 1999 does not constitute a binding agreement, and no other evidence has been provided sufficient to raise a question of fact as to the absence of good faith or fair consideration. Finally, Michael has not alleged, let alone demonstrated, that he was a good-faith purchaser for value without knowledge of the fraud at the time of conveyance so as to render immaterial the lack of good faith in making the conveyance. Once again, this was clearly indicated by Michael’s participation in the asset protection plan with his mother and Proskauer Rose before the 2009 alleged transfer.
Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Eileen A. Rakower, J.), entered November 9, 2012, which, to the extent appealed from as limited by the briefs, granted plaintiffs’ motion for summary judgment on their first cause of action to set aside the transfer of a condominium unit by debtor Sofia Frankel to her son Michael Frankel as a fraudulent conveyance under Debtor and Creditor Law §§ 273-a and 278, dismissed Sofia Frankel’s fourth affirmative defense based on a 1999 oral agreement to convey the subject condominium to Michael Frankel, and dismissed Michael Frankel’s first counterclaim based on the 1999 oral agreement for a declaration that he is the rightful owner of the condominium, should be affirmed, with costs.
Acosta, Saxe and Freedman, JJ., concur.
Order and judgment (one paper), Supreme Court, New York County, entered November 9, 2012, affirmed, with costs.

. Plaintiffs’ memoranda of law submitted in connection with their motion are not included in the record on appeal.

. Michael’s affidavit in opposition to the motion states that these credits remain an unresolved matter between defendants.

. Debtor and Creditor Law § 272 provides:
“Fair consideration is given for property, or obligation,
“a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or
“b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.”

. In the attempt to construe the issue of her good faith as a “red herring,” Sofia’s opposing affidavit states, quite unintelligibly:
“While the services and advice performed and rendered by [Proskauer Rose LLP] are privileged, and without waiving said *144 privilege[ ], it is fair to say that there [sic] services, in addition to tax and estate planning, limit [sic] liability company formation (Applied Medical), and an appreciation of my circumstances as a consequence of the demise of Lehman Brothers, my employer, at the end of 2008.”