Pentagon Fed. Credit Union v Porter (2024 NY Slip Op 51015(U))

[*1]

Pentagon Fed. Credit Union v Porter

2024 NY Slip Op 51015(U)

Decided on August 6, 2024

Supreme Court, Richmond County

Castorina, Jr., J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 6, 2024
Supreme Court, Richmond County

Pentagon Federal Credit Union as Successor-in-Interest 
 by Merger to Progressive Credit Union, Plaintiff,

against
Vladik Porter a/k/a Vlad Porter and Iryna Porter, Defendant.

Index No. 150902/2023

Attorney for the Plaintiff
Jocelyn E Lupetin, Esq.
Cullen and Dykman LLP 
The Omni Building
333 Earle Ovington Boulevard, 2nd Floor
Uniondale, NY 11553 
Phone: (516) 296-9109 
E-mail: jlupetin@cullenllp.com
Attorney for Defendants
Thomas Torto, Esq. 
Law Office of Thomas Torto 
419 Park Avenue South Suite 1007
New York, NY 10016 
Phone: (212) 532-5881 
E-mail: tomtorto@aol.com

Ronald Castorina, Jr., J.

The following e-filed documents listed on NYSCEF (Motion No. 002) numbered 50-89 were read on this motion. Oral argument was completed on May 30, 2024.
Upon the foregoing documents, Motion Sequence No. 002 is resolved and therefore, it is hereby,
ORDERED, that Plaintiff's request for summary judgment CPLR § 3212 [b] and dismissal of Defendants' affirmative defenses is DENIED; and it is further,
ORDERED, that the matter is adjourned for a status conference on August 19, 2024, at 9:30 AM, at the Courthouse located at 26 Central Avenue, Courtroom 330, Staten Island, NY; and it is further,
ORDERED, that the Clerk of the Court shall enter judgment accordingly.
 Memorandum Decision

 I. Procedural History
Plaintiff commenced this action by filing the summons and complaint under the Uniform Voidable Transactions Act (New York State Debtor and Creditor Law Article 10) on or about May 15, 2023, seeking to enforce a judgment entered in Plaintiff's favor. Plaintiff filed Motion Sequence No. 002 by Notice of Motion on March 22, 2024, seeking (a) summary judgment on the issue of (avoidance of the transfer to defendant Iryna Porter of Defendant Vladik Porter a/k/a Vlad Porter's 50% interest in the Net Sale Proceeds i) avoidance of the transfer to defendant Iryna Porter of Defendant Vladik Porter a/k/a Vlad Porter's 50% interest in the Net Sale Proceeds in the sum of $349,114.76 for the sale of the real property located at 156 Stonegate Drive, Unit 93, Staten Island, New York 10304; (ii) a judgment against Iryna Porter in an amount equal to 50% of the Net Sale Proceeds, plus attorneys' fees and (iii) an Order of attachment with regard to the Beebe Property, located at 15 Beebe Street, Staten Island, New York 10301 in an amount equal to 50% of the Net Sale Proceeds, plus attorneys' fees.
Plaintiff also seeks summary judgment pursuant to CPLR § 3212 [b] on the issue of (iv) enjoining and prohibiting Defendants form disposing of, selling, or otherwise transferring the Beebe Property unless and until any judgment entered against Iryna Porter herein is satisfied; and (v) directing that Plaintiff may levy execution on the Beebe Property. Plaintiff further seeks (b) dismissal of Defendants' affirmative defenses; (c) an award of attorneys' fees against Defendants, jointly and severally, in the sum of $39,761.93; and (d) such other, further, and different relief as to this Court may seem just and proper.
Defendants filed opposition to Motion Sequence No. 002 on May 16, 2024. Plaintiff filed reply on May 23, 2024. On May 30, 2024, oral argument was heard on Motion Sequence No. 002.

II. Facts
On or about August 4, 2010, Defendants jointly purchased certain real property located at 156 Stonegate Drive, Unit 93, Staten Island, New York 10304, hereinafter referred to as the "Stonegate property". (NY St Cts Filing [NYSCEF] Doc Nos. 54; 55).
On or about November 17, 2010, non-party, Boris Porter, hereinafter referred to as BP, Defendant V. Porter, and non-party, Bronya Dukach, hereinafter referred to as BD, as coborrowers, and non-party, Snow Hacking Corp., hereinafter referred to as SHC, as guarantor, executed and delivered to Plaintiff a promissory note in the original principal amount of $300,000.00, hereinafter referred to as "501 Note" and a security agreement, hereinafter referred to as "501 security agreement". (NY St Cts Filing [NYSCEF] Doc No. 52). The 501 Note was on occasion modified to extend the maturity date and/or modify the applicable interest rate. (see id).
On or about April 24, 2019, BP, Defendant V. Porter, BD and SHC, collectively referred to as "Debtors", executed and delivered to Plaintiff, a loan modification and extension agreement, hereinafter referred to as the "501 Modification", which modified and extended the terms of the 501 Note. (see id). The 501 Note, the 501 Security Agreement, together with all [*2]modifications and extensions, including, specifically, the 501 Modification is collectively referred to as the "501 Loan Documents". Pursuant to the terms of the 501 Modification, the failure of Debtors to pay amounts due pursuant thereto constitutes an event of default. (see id).
Debtors failed to make payments in compliance with the term of the 501 Loan Documents and Plaintiff issued a demand letter to Debtors on March 4, 2021; however, the default was not cured. (see id).
On or about July 21, 2011, BD, as Borrower, BP and Defendant V. Porter, as coborrowers, and SHC, as guarantor, executed and delivered to Plaintiff a Promissory Note in the original principal amount of $196,200.00, hereinafter referred to as the "504 Note" and executed and delivered to Plaintiff a security agreement, hereinafter referred to as the "504 Security Agreement". (see id). The 504 Note was occasionally modified to extend the maturity date and/or modify the applicable interest rate. (see id).
On or about April 26, 2019, Debtors executed and delivered to Plaintiff, a loan modification and extension agreement, hereinafter referred to as the "504 Modification", which modified and extended the terms of the 504 Note, providing that the failure of Debtors to pay amounts due pursuant thereto would constitute an event of default. (see id). The 504 Note, the 504 Security Agreement, together with all modifications and extensions, including, specifically, the 504 Modification is collectively referred to as the "504 Loan Documents".
Debtors failed to make payments in compliance with the term of the 504 Loan Documents and Plaintiff issued the demand letter to Debtors on March 4, 2021; however, the default was not cured. (see id).
On or about February 25, 2015, BD, as Borrower, BP and Defendant V. Porter, as coborrowers, executed and delivered to Plaintiff a Secured Promissory Note in the original principal amount of $72,000.00, hereinafter referred to as the "505 Note", and executed a guaranty of payment, hereinafter referred to as the "505 Guaranty"). (see id). The 505 Note was occasionally modified to extend the maturity date and/or modify the applicable interest rate. (see id).
On or about April 26, 2019, Debtors executed and delivered to Plaintiff, a loan modification and extension Agreement, hereinafter referred to as the "505 Modification" which modified and extended the terms of the 505 Note, providing that the failure of Debtors to pay amounts due pursuant thereto constitutes an event of default. (see id). The 505 Note, the 505 Guaranty and the 505 Security Agreement, together with all modifications and extensions, including, specifically, the 505 Modification collectively is referred to as the "505 Loan Documents".
Debtors failed to make payments in compliance with the term of the 505 Loan Documents and Plaintiff issued the Demand Letter to Debtors on March 4, 2021; however, the default was not cured. (see id).
When Debtors failed to cure the alleged default, Plaintiff commenced an action seeking a money judgment. (see id). The action was filed in the Supreme Court of the State of New York, County of Kings, on March 17, 2021, assigned Index No. 506299/2021, and was captioned: Pentagon Federal Credit Union, as successor-in-interest by merger to Progressive Credit Union v. Boris Porter, Vladik Porter a/k/a Vlad Porter, Bronya Dukach and Snow Hacking Corp, hereinafter referred to as the "Note Action". (see id).
Defendant V. Porter was personally served with process in the Note Action pursuant to CPLR § 308 [1] on April 3, 2021. (NY St Cts Filing [NYSCEF] Doc Nos. 54; 56). Counsel for [*3]Defendant V. Porter filed a Notice of Appearance in the Note Action on May 19, 2021. (NY St Cts Filing [NYSCEF] Doc Nos. 54; 57). Post commencement of the Kings County action, on or about May 7, 2021, Defendants sold the Stonegate Property to non-parties, Eugene Vasilchenko and Anna Kolodina for the sum of $625,000.00. (NY St Cts Filing [NYSCEF] Doc Nos. 54; 58; 69; 84; 85).
Plaintiff contends that as evidenced by the Net Sale Proceeds as well as the Closing Statement, the sum of $349,114.76 was paid to Defendant I. Porter at the closing. (NY St Cts Filing [NYSCEF] Doc No. 54). This evidence includes four (4) checks made out to Defendant I. Porter and dated April 6, 2021: (1) a check from Victoria Shteiman's IOLA Trust Account in the sum of $4,483.10; (2) a check from Menicucci Villa Cilmi PLLC in the sum of $293,320.42; (3) a check from Eugene Vasilchenko in the sum of $50,904.99; and (4) a check from Eugene Vasilchenko in the sum of $406.25 (NY St Cts Filing [NYSCEF] Doc No. 68). Defendant I. Poster admits that there were four checks from the sale of the Stonegate Property made payable to her in the total sum of $349,114.76 and that those checks were deposited into the Defendants' joint checking account at TD Bank (NY St Cts Filing [NYSCEF] Doc No. 85). Defendant I. Porter contends that each Defendant was a fifty percent owner of the Stonegate property and had a corresponding fifty percent interest in the total net sale proceeds in the approximate sum of $175,000.00. (see id).
On or about May 11, 2021, Defendant I. Porter, in her sole capacity, purchased real property located at 15 Beebe Street, Staten Island, New York 10301, hereinafter referred to as the "Beebe property" for the sum of $1,300,000.00. (NY St Cts Filing [NYSCEF] Doc Nos. 59; 85). Defendant I. Porter contends that the Beebe property is the Defendants' principal residence. (NY St Cts Filing [NYSCEF] Doc No. 85).
On October 18, 2021, a Judgment was entered in the Note Action in favor of Plaintiff and jointly and severally against Defendant V. Porter, BP, BD, and SHC, in the sum of $361,409.38. (NY St Cts Filing [NYSCEF] Doc Nos. 52; 60; 85). Plaintiff maintains that as of March 19, 2024, the entire Judgment amount, together with statutory interest thereon, remains due and owing from Debtors. (NY St Cts Filing [NYSCEF] Doc No. 52). Plaintiff further contends that following entry of the Judgment, Plaintiff sought to enforce same, and it was through post-judgment actions that Plaintiff learned that the Stonegate property had been sold prior to the entry of the Judgment and during the pendency of the Note Action. (see id). Plaintiff maintains Defendant V. Porter did not inform Plaintiff of the sale of the Stonegate Property. (see id).
Defendant V. Porter contends that
As a 50% owner of the Stonegate property, I had a corresponding fifty percent interest of approximately $175,000[.00] in net sale proceeds. My 50% share of the net sale proceeds was used to pay (i) my Citibank credit card debt of approximately $75,000; (ii) business debts of VB Porter & Co., a real estate brokerage company of which I was a principal; (iii) medical bills; (iv) legal fees; and (v) rent, unreimbursed medical bills, legal fees and the funeral expenses of my father.
I also reimbursed Iryna out of my share of the net sale proceeds from the Stonegate property for car payments she made on by behalf for many years . . .
The sale of the Stonegate property was for fair consideration and in good faith. The sale did not render me insolvent, and was not made with the actual intent to hinder, delay or defraud plaintiff. At the time of the sale, no judgment had been entered against me.
On May 11, 2021, Iryna purchased the real property located at 15 Beebe Street in Staten [*4]Island. The purchase price was $1,300,000[.00]. Iryna paid the contract downpayment of $70,000 with her own funds. Iryna obtained a mortgage from Homepoint Financial Corporation in the principal sum of $800,000[.00] to finance the purchase of the property. Checks issued in payment of the purchase price and for Iryna's title charges were from Iryna's individual account with TD Bank . . . The principal balance due on the mortgage is approximately $800,000. The Beebe property is our principal residence. (NY St Cts Filing [NYSCEF] Doc No. 84).
Defendant V. Porter maintains that he did not transfer to Iryna Porter his fifty percent interest in the net proceeds from the sale of the Stonegate Property and the judgment is based on his default in paying taxi medallion loans made by Plaintiff's predecessor. (NY St Cts Filing [NYSCEF] Doc No. 87).
Plaintiff contends Defendant V. Porter's allegations that he used his fifty percent share of the net proceeds from the sale of the Stonegate Property for other debts and did not transfer his interest in the net proceeds to Defendant I. Porter are unsubstantiated by the evidence.

 III. Discussion
"Summary judgment is designed to expedite all civil cases by eliminating from the Trial Calendar claims which can properly be resolved as a matter of law. Since it deprives the litigant of his day in court it is considered a drastic remedy which should only be employed when there is no doubt as to the absence of triable issues" (see Andre v Pomeroy, 35 NY2d 361 [1974] citing Millerton Agway Cooperative, Inc. v Briarcliff Farms, Inc., 17 NY2d 57 [1966]).
"A motion for summary judgment shall be supported by affidavit, by a copy of the pleadings and by other available proof, such as depositions and written admissions" (see Poon v Nisanov, 162 AD3d 804 [2d Dept 2018] quoting CPLR § 3212 [b]). "The moving party's submissions must show 'that there is no defense to the cause of action or that the cause of action or defense has no merit'" (see id). "To defeat summary judgment, the nonmoving party need only rebut the prima facie showing made by the moving party so as to demonstrate the existence of a triable issue of fact" (see id citing Alvarez v Prospect Hosp., 68 NY2d 320 [1986]; Stukas v Streiter, 83 AD3d 18 [2d Dept 2011]).
"On a motion for summary judgment, facts must be viewed 'in the light most favorable to the non-moving party'" (see Shabat v State of New York, 177 AD3d 1009 [2d Dept, 2019] quoting Vega v Restani Constr. Corp., 18 NY3d 499 [2012]; Ortiz v Varsity Holdings, LLC, 18 NY3d 335 [2011]).
The New York Uniform Voidable Transactions Act § 273 provides:
(a) A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
(1) with actual intent to hinder, delay or defraud any creditor of the debtor; or
(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
(i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
(ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.
(b) In determining actual intent under paragraph one of subdivision (a) of this section, [*5]consideration may be given, among other factors, to whether:
(1) the transfer or obligation was to an insider;
(2) the debtor retained possession or control of the property transferred after the transfer;
(3) the transfer or obligation was disclosed or concealed;
(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
(5) the transfer was of substantially all the debtor's assets;
(6) the debtor absconded;
(7) the debtor removed or concealed assets;
(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
(11) the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor.
(c) A creditor making a claim for relief under subdivision (a) of this section has the burden of proving the elements of the claim for relief by a preponderance of the evidence. (see Dr & Cr § 273)
"Pursuant to the version of Debtor and Creditor Law § 273 applicable at the time of the subject conveyances, 'a conveyance that renders the conveyor insolvent is fraudulent as to creditors without regard to actual intent, if the conveyance was made without fair consideration'" (see Cheek v Brooks, 188 AD3d 785 [2d Dept 2020] quoting Stout St. Fund I, L.P. v Halifax Group, LLC, 148 AD3d 744 [2d Dept 2017]; citing see L 2019, ch 580, § 2; Debtor and Creditor Law former § 273; Grace Plaza of Great Neck, Inc. v Heitzler, 2 AD3d 780 [2d Dept 2003]).
"To constitute fair consideration, the value given in exchange must be fairly equivalent and proportionate to the value of the property conveyed" (see id citing Debtor and Creditor Law former § 272; Commodity Futures Trading Commn. v Walsh, 17 NY3d 162 [2011]; Stout St. Fund I, L.P. v Halifax Group, LLC, 148 AD3d 744 [2d Dept 2017]; Sardis v Frankel, 113 AD3d 135 [1st Dept 2014]).
"An individual is 'insolvent' within the meaning of the Debtor and Creditor Law when 'the present fair salable value of his [or her] assets is less than the amount that will be required to pay his [or her] probable liability on . . . existing debts as they become absolute and matured'" (see id quoting Grace Plaza of Great Neck, Inc. v Heitzler, 2 AD3d 780 [2d Dept 2003] quoting Debtor and Creditor Law former § 271 [1]; citing Matter of City of Syracuse Indus. Dev. Agency (Amadeus Dev., Inc.), 156 AD3d 1329 [4th 2017]). "Insolvency is a 'prerequisite[ ] to a finding of constructive fraud under [former] section 273'" (see id quoting Matter of City of Syracuse Indus. Dev. Agency (Amadeus Dev., Inc.), 156 AD3d 1329 [4th Dept 2017] quoting Joslin v Lopez, 309 AD2d 837 [2d Dept 2003]; citing Murin v Estate of Schwalen, 31 AD3d 1031 [3d Dept 2006]).
The New York Uniform Voidable Transactions Act § 274 provides
(a) A transfer made or obligation incurred by a debtor is voidable as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent [*6]value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.
(b) A transfer made by a debtor is voidable as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.
(c) Subject to subdivision (b) of section two hundred seventy-one of this article, a creditor making a claim for relief under subdivision (a) or (b) of this section has the burden of proving the elements of the claim for relief by a preponderance of the evidence. (see Dr & Cr § 274)
Pursuant to the version of that statute applicable at the time of the conveyance, "a conveyance is fraudulent as to creditors without regard to actual intent when it is 'made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his [or her] hands after the conveyance is an unreasonably small capital'" (see Old Republic Natl. Title Ins. Co. v 1152 53 Mgt., LLC, 2024 NYAppDiv LEXIS 2564 [2d Dept 2024] quoting Palmerone v Staples, 195 AD3d 736 [2d Dept 2021] quoting Dr & Cr § 274; citing Board of Mgrs. of E. Riv. Tower Condominium v Empire Holdings Group, LLC, 175 AD3d 1377 [2d Dept 2019]).
On October 18, 2021, in the matter of Pentagon Federal Credit Union, as successor-in-interest by merger to Progressive Credit Union v. Boris Porter, Vladik Porter a/k/a Vlad Porter, Bronya Dukach and Snow Hacking Corp., Supreme Ct. Kings Co. Index No. 506299/21, a judgment was entered in plaintiff's favor against the defendants therein, jointly and severally, in the sum of $361,409.38. (NY St Cts Filing [NYSCEF] Doc Nos. 52; 54; 60). Defendant Iryna Porter was not a party defendant in that Kings County action.
Plaintiff commenced this action on May 15, 2023 pursuant to the Debtor Creditor Law contending that the disbursement of the net sale proceeds from Defendants' sale of their home, Stonegate property, was made with the actual intent to defraud Plaintiff. In their answer, Defendants denied the material allegations of the complaint and raised various affirmative defenses, including the ninth, which contended that, "Upon information and belief, the transactions at issue herein were for fair consideration, in good faith, did not render defendant Vladik Porter a/k/a Vlad Porter insolvent, and were not made with the actual intent to hinder, delay or defraud plaintiff, and therefore did not violate Debtor and Creditor Law §§ 273, 273-a, 275 and/or 276." (NY St Cts Filing [NYSCEF] Doc No. 65).
Defendants both maintain in their affidavits that on June 15, 2010, they jointly purchased the Stonegate property as their principal residence for a purchase price was $420,000.00 and obtained a loan from Hudson City Savings Bank in the principal sum of $294,000. (NY St Cts Filing [NYSCEF] Doc Nos. 84; 85). Defendants contend that they sold the Stonegate property on April 6, 2021, for $625,000 to Eugene Vasilchenko and Anna Kolodina in an arms-length transaction. (see id). Defendants further contend that at the time of the sale, the balance due on the mortgage held by Hudson City Savings Bank was approximately $231,439.00 and the mortgage was satisfied at the closing. (see id).
The net proceeds from the sale of the Stonegate property were $349,114.76, which was paid in four checks made payable to Defendant Iryna Porter and were deposited into Defendants' TD Bank joint checking account. (NY St Cts Filing [NYSCEF] Doc Nos. 54; 68). Defendant Vlad Porter, as a 50% owner of the Stonegate property, had a corresponding fifty percent interest [*7]in the total net sale proceeds, in the approximate sum of $174,557.38. Defendant V. Porter's contends his fifty percent interest in the total net sale proceeds, were used to pay the following expenses:
a. Defendant V. Porter's Citibank credit card debt of approximately $75,000.00;
b. business debts of VB Porter & Co., a real estate brokerage company of which Defendant V. Porter was a principal;
c. Defendant V. Porter's Medical bills;
d. Defendant V. Porter's legal fees; and
e. rent, unreimbursed medical bills, legal fees and the funeral expenses of Defendant V. Porter's father. (NY St Cts Filing [NYSCEF] Doc Nos. 54; 67; 82; 84).
On or about May 11, 2021, Defendant I. Porter, in her sole capacity, purchased the Beebe Property for the sum of $1,300,000.00, (NY St Cts Filing [NYSCEF] Doc Nos. 59; 85), which she contends is the Defendants' principal residence. (NY St Cts Filing [NYSCEF] Doc No. 85). Defendant I. Porter maintains in her affidavit that "[t]he downpayment of $70,000[.00] came from my own funds. I obtained a mortgage from Homepoint Financial Corporation in the principal sum of $800,000 to finance the purchase of the property. Checks issued in payment of the purchase price and for my title charges were from my individual account with TD Bank" (see id).
Plaintiff contends that no portion of the Net Sale Proceeds from the sale of the Stonegate property were paid to Defendant V. Porter. (NY St Cts Filing [NYSCEF] Doc Nos. 51; 54; 58; 68; 69). Plaintiff further contends that:
(1) Defendant V. Porter allegedly transferred his interest in the proceeds from the sale of the Stonegate property to his wife, Defendant I. Porter;
(2) Defendant V. Porter allegedly retained possession or control of the property transferred, which is supported by Defendant V. Porter's affidavit that the Beebe property is his principal residence;
(3) prior to the alleged transfer Defendant V. Porter had been sued;
(4) the alleged transfer was concealed;
(5) Defendant V. Porter did not receive reasonably equivalent value, or any consideration, in exchange for the alleged transfer;
(6) Defendant V. Porter the debtor was rendered insolvent by the alleged transfer; and
(7) the alleged transfer occurred shortly before a substantial debt was incurred.
"[T]he proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (see Sanchez v Ageless Chimney, Inc., 219 AD3d 767 [2d Dept 2023] quoting Alvarez v Prospect Hosp., 68 NY2d 320 [1986]; citing Winegrad v NY Univ. Med. Ctr., 64 NY2d 851 [1985]).
"To sustain this burden, the defendant must address and rebut any specific allegations of malpractice set forth in the . . . bill of particulars" (see Cujcuj v Jayadevan, 218 AD3d 436 [2d Dept 2023] quoting Koi Hou Chan v Yeung, 66 AD3d 642 [2d Dept 2009]). "To defeat summary judgment, the nonmoving party need only raise a triable issue of fact with respect to the element of the cause of action or theory of nonliability that is the subject of the moving party's prima facie showing" (see id quoting Zito v Jastremski, 84 AD3d 1069 [2d Dept 2011]; citing Schmidt v Bangiyev, 210 AD3d 924 [2d Dept 2022]).
For Plaintiff to demonstrate prima facie entitlement to summary judgment on the two [*8]causes of action asserted in the Complaint—(i) Avoidance of Transfers Pursuant to Debtor and Creditor Law §§ 273, 276, and (ii) 276-a and Avoidance of Transfers Pursuant to §§ 274, 276 and 276-a—by a preponderance of the evidence, Plaintiff must establish that there has in fact been a transfer of Defendant V. Porter's fifty percent interest in the net sale proceeds from the sale of the Stonegate property to Defendant I. Porter and said transfer was without consideration, rendered him insolvent and was done in an effort to hinder, delay and defraud Plaintiff and to generally stymie Plaintiff's ability to enforce its judgment against V. Porter.
Defendant V. Porter denies in his affidavit that any transfer was made to his wife, Defendant I. Porter and testifies that
[a]s a 50% owner of the Stonegate property, I had a corresponding fifty percent interest of approximately $175,000[.00] in net sale proceeds. My 50% share of the net sale proceeds was used to pay (i) my Citibank credit card debt of approximately $75,000; (ii) business debts of VB Porter & Co., a real estate brokerage company of which I was a principal; (iii) medical bills; (iv) legal fees; and (v) rent, unreimbursed medical bills, legal fees and the funeral expenses of my father. (NY St Cts Filing [NYSCEF] Doc No. 84).
Defendant V. Porter provided submissions purporting to document the various expenditures he made from the funds he received from his fifty percent interest of the Stonegate property. (NY St Cts Filing [NYSCEF] Doc No. 72). Defendant V. Porter further contends that "I also reimbursed Iryna out of my share of the net sale proceeds from the Stonegate property for car payments she made on by behalf for many years." (NY St Cts Filing [NYSCEF] Doc No. 84). Defendant V. Porter further maintains "[t]he sale of the Stonegate property was for fair consideration and in good faith. The sale did not render me insolvent, and was not made with the actual intent to hinder, delay or defraud plaintiff. At the time of the sale, no judgment had been entered against me." (see id).
In support of Defendant V. Porter's affirmation that he was not insolvent, he provided the Defendants' joint tax returns for 2019, 2020 and 2021. (NY St Cts Filing [NYSCEF] Doc Nos. 67; 72). Defendants jointly own a condominium unit (#524) at 19370 Collins Avenue, Sunny Isles Beach, Florida, which was purchased on August 9, 2019. (NY St Cts Filing [NYSCEF] Doc No. 67). Defendant further contends that he is a co-owner of certain corporations which own taxi medallions. (NY St Cts Filing [NYSCEF] Doc No. 84).
Defendant I. Porter maintains in her affidavit that
On May 11, 2021, I purchased a single family home located at 15 Beebe Street in Staten Island for $1,300,000. The downpayment of $70,000 came from my own funds. I obtained a mortgage from Homepoint Financial Corporation in the principal sum of $800,000 to finance the purchase of the property. Checks issued in payment of the purchase price and for my title charges were from my individual account with TD Bank. (NY St Cts Filing [NYSCEF] Doc No. 85).
There are several issues of triable fact, foremost of which is the essential element of whether there was an actual transfer of Defendant V. Porter's fifty percent interest in the proceeds from the sale of the Stonegate property to Defendant I. Porter and if there was such a transfer was the transfer without consideration, was Defendant V. Porter rendered insolvent and was the transfer done in an effort to hinder, delay and defraud Plaintiff and to generally stymie Plaintiff's ability to enforce its judgment against Defendant V. Porter.
Accordingly, as there are triable issues of fact, Plaintiff's request for summary judgment [*9]CPLR § 3212 [b] and dismissal of Defendants' affirmative defenses is DENIED.
Decretal Paragraphs
ORDERED, that Plaintiff's request for summary judgment CPLR § 3212 [b] and dismissal of Defendants' affirmative defenses is DENIED; and it is further,
ORDERED, that the matter is adjourned for a status conference on August 19, 2024, at 9:30 AM, at the Courthouse located at 26 Central Avenue, Courtroom 330, Staten Island, NY; and it is further,
ORDERED, that the Clerk of the Court shall enter judgment accordingly.
The foregoing shall constitute the Decision and Order of this Court.
Dated: August 6, 2024
Staten Island, New York
E N T E R,
HON. RONALD CASTORINA, JR.
JUSTICE OF THE SUPREME COURT